## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

———————————————————————
)
SHERIFF BRAD COE, *et al.*                    )
)
                              Plaintiffs       )
                                               )          No. 3:21-cv-00168
        v.                                     )
                                               )
JOSEPH R. BIDEN, JR., *et al.*                 )
                                               )
                              Defendants.      )
———————————————————————)


## MOTION TO TRANSFER UNDER 28 U.S.C. § 1404,
## OR IN THE ALTERNATIVE, 28 U.S.C. § 1406

Plaintiffs consist of a national nonprofit organization with no unique connection to Texas, and five Texas Sheriffs and the five counties they represent—three of which are located in the Western District of Texas, with the remaining two located in the Laredo Division and Corpus Christi Division of the Southern District of Texas. Yet Plaintiffs brought suit in *this* Division, one that covers four counties that have no apparent, material connection to the parties and relevant facts at issue in this case. Continued litigation in this Court risks imposing a burden on both parties and relevant nonparties alike, potentially requiring multiple individuals (including key witnesses) to travel hundreds of miles to testify in Court. More fundamentally, Plaintiffs make little effort to show that the handful of Plaintiffs with any presence in the Southern District of Texas have standing, and thus it is unclear whether venue is proper in this District at all. Thus, the Court should transfer this action to the Western District of Texas. At a minimum, and only if the Court finds that

venue is proper in the Southern District of Texas, the Court should transfer this action to the Laredo Division or the Corpus Christi Division of the Southern District of Texas. Any one of those forums would have a more significant connection to the facts and parties relevant to this litigation.

## BACKGROUND

Plaintiffs challenge recent immigration enforcement guidance that U.S. Immigration and Customs Enforcement ("ICE") issued at the request of the Department of Homeland Security ("DHS"). Specifically, on January 20, 2021, the then-Acting Secretary of Homeland Security issued a memorandum titled "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities" (the "DHS Memo"). The DHS Memo makes note of DHS's "limited resources," operational challenges at the southwest border, and the challenges posed by the COVID-19 pandemic. Further, it seeks to ensure that DHS carries out its duties in service of its mission. Thus, the Acting Secretary instructed DHS components to focus on certain broad "priorit[y]" groups of noncitizens when rendering "a broad range" of "discretionary enforcement decisions, including deciding" whom to "arrest" and "detain." *Id.* at 2. These priority groups include those who, in DHS's view, are most likely to pose threats to the Nation's "[n]ational security," "[b]order security," and "[p]ublic safety." *Id.* The DHS Memo clarifies, however, that "nothing" therein "prohibits the apprehension or detention of" other noncitizens "who are *not* identified as priorities." *Id.* at 3 (emphasis added).

The DHS Memo also calls on "the Acting Director" of U.S. Immigration and Customs Enforcement ("ICE") to "issue operational guidance on the implementation" of

2

this priority framework. *Id.* Thus, on February 18, 2021, ICE issued an interim memorandum to effectuate the removal priorities in the DHS Memo. *See* Interim Guidance: Civil Immigration Enforcement and Removal Priorities (the "ICE Memo"). The ICE Memo confirms that "ICE operates in an environment of limited resources," and "necessarily must prioritize" certain "enforcement and removal actions over others" in order to "most effectively achieve [its] mission" of "national security, border security, and public safety." *Id.* at 2-3. The ICE Memo then catalogues the priority groups identified in the DHS Memo, and notes that, at ICE's request, DHS agreed to include certain other groups of noncitizens into the list of priority groups. *Id.* at 1, 4-5 (hereinafter, the priority group provisions in the Memoranda will be referred to as the "Priority Framework").

Furthermore, the ICE Memo reiterates that the Priority Framework does not "prohibit the arrest, detention, or removal of *any* noncitizen," and that enforcement actions against non-priority persons are still permissible when justified based on "all relevant facts and circumstances," including the nature of any prior criminal convictions. *Id.* at 3 (emphasis added). The ICE Memo requires that ICE officials secure "preapproval" from either a Field Office Director ("FOD") or a Special Agent in Charge ("SAC") before pursuing "enforcement or removal actions" of those not considered presumed priorities. *Id.* at 6.

Plaintiffs—a national nonprofit organization, five Texas Sheriffs, and the five Counties those Sheriffs represent—claim that the Priority Framework conflicts with certain provisions in the Immigration and Nationality Act ("INA"). *See* Am. Compl. ¶¶ 1, 99, 106, 111, ECF No. 17. To establish both standing and, for purposes of preliminary relief,

irreparable harm, Plaintiffs assert that additional noncitizens may remain in the Plaintiff Counties due to the Priority Framework, and that the Plaintiff Counties will have to expend additional resources to investigate and detain some subset of these noncitizens if they commit crimes within the Counties. *See id.* ¶¶ 84-91. Plaintiffs also allege that the national nonprofit Plaintiff, the ICE Officers Division of the Federal Police Foundation ("the Foundation"), has been harmed because it chose "to expend resources that it otherwise would not have expended informing its members of the . . . Memorandum," *id.* ¶ 94, and its ICE Officer members supposedly must "knowingly violate federal law or face discipline," *id.* ¶ 96.

Notably, although Plaintiffs brought suit in this Court, the Galveston Division of the Southern District of Texas, it does not appear that *any* Plaintiff is located in any county within the Galveston Division:[1]

- The ICE Officers Division is "registered in the State of Delaware," and Plaintiffs generally allege that it has "[m]embers . . . serving in the Southern District of Texas" (but do not identify any member whose duty station is in the Galveston Division). Am. Compl. ¶ 30.[2]

- "Plaintiff Brad Coe is the Sheriff of Kinney County," Am. Compl. ¶ 19, located in the Western District of Texas, *see* 28 U.S.C. § 124(d)(5).

- "Plaintiff J.W. Guthrie is the Sheriff of Edwards County," Am. Compl. ¶ 21, located in the Western District of Texas, *see* 28 U.S.C. § 124(d)(5).

- "Plaintiff Arvin West is the Sheriff of Hudspeth County," Am. Compl. ¶ 25, located in the Western District of Texas, *see* 28 U.S.C. § 124(d)(6).

---

[1] "The Galveston Division comprises the counties of Brazoria, Chambers, Galveston, and Matagorda." 28 U.S.C. § 124(b)(1).
[2] And as discussed *infra*, there are no ICE employees whose duty station is in the Galveston Division. *See* Charles Decl. ¶ 7.

- "Plaintiff Emmett Shelton is the Sheriff of McMullen County," Am. Compl. ¶ 23, located in the Laredo Division of the Southern District of Texas, *see* 28 U.S.C. § 124(b)(3).

- "Plaintiff Larry Busby is the Sheriff of Live Oak County," Am. Compl. ¶ 27, located in the Corpus Christi Division of the Southern District of Texas, *see* 28 U.S.C. § 124(b)(6).

Indeed, neither the Complaint nor Plaintiffs' preliminary injunction motion identifies why Plaintiffs brought suit in this Division. Defendants now move to transfer this action to a more suitable venue.

## ARGUMENT

I.   **The Court should transfer this matter to the Western District of Texas, or alternatively to either the Laredo Division or Corpus Christi Division of the Southern District of Texas, under 28 U.S.C. § 1404.**

Plaintiffs could have filed this action in a number of venues where one or more parties to this litigation are located, including the Western District of Texas, or the Laredo Division or Corpus Christi Division of this District. Plaintiffs, however brought suit in this Division, notwithstanding the lack of any apparent, material connection to the relevant persons and facts involved in this matter. As noted above, none of the Plaintiff Sheriffs and Counties are located in this Division, and Plaintiffs do not allege that any relevant member of the ICE Officers Division is located in this Division. Further, Plaintiffs do not allege that key federal immigration personnel or facilities are located in this Division. In short, Plaintiffs have identified no meaningful connection between this forum and their claims and provided no reason for why they elected to file their Complaint in this Court instead of a Division with a direct connection to the dispute.

5

Although "a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute," 28 U.S.C. § 1391, "Congress . . . has tempered the effects of this general venue statute by enacting the venue transfer statute, 28 U.S.C. § 1404." Under § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Volkswagen*, 545 F.3d at 313; *see id.* at 311 ("[D]istrict courts have 'broad discretion in deciding whether to order a transfer,'" but "this discretion has limitations imposed by . . . § 1404(a).") (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. Then, the Court must determine whether the party that "seeks the transfer" has shown "good cause." *Id.* at 315. The Court may consider any number of factors, including "private interest factors" such as "the relative ease of access to sources of proof" and "the availability of compulsory process to secure the attendance of witnesses." *Id.* The Court may also consider "public interest factors," such as "local interest[s]." *Id.* These factors "are not necessarily exhaustive or exclusive" and "none . . . can be said to be of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

6

Here, the Court should transfer this matter under § 1404(a) to the Western District of Texas, or alternatively to either the Laredo Division or Corpus Christi Division of the Southern District of Texas.[3] To start, Defendants satisfy the threshold requirement that this case could "have been brought" in any of the "destination venue[s]." *Id.* at 312. Three of the Plaintiff Counties are located in the Western District of Texas, and the other two Plaintiff Counties are located in the Laredo Division and the Corpus Christi Division of this District. Venue would be proper in any of those courts so long as the relevant Plaintiffs establish jurisdiction, including standing, to challenge the Priority Framework. Furthermore, there is good cause for Defendants' requested transfer.

First, proceedings within this Division, including in-person evidentiary hearings and a potential trial, would be burdensome for both parties and nonparties alike. Based on Plaintiffs' Complaint, it appears that *no* party to this litigation has a material presence in this Division. *See supra* at 3-5. Further, critical nonparties are likely located in other Divisions as well. For example, the Sheriff and County Plaintiffs assert that they have standing because the Memoranda have caused (and will cause) increased crime within, and increased expenditures by, their respective counties. *See supra* at 4-5. The personnel with knowledge over these assertions, *including non-parties*, are presumably located in the

---

[3] Defendants previously moved to consolidate this action with *Texas, et al. v. United States, et al.*, Civil Action 6:21-16, brought in the Victoria Division of the Southern District of Texas. Although the Victoria Division would ordinarily have been an inconvenient forum for this action, Defendants considered the substantial overlap between the two actions as weighing in favor of consolidation. Judge Tipton, however, denied the motion to consolidate so the consideration of whether to transfer this current action should be viewed independent of *Texas, et al. v. United States, et al.*, Civil Action 6:21-16.

relevant counties—all of which are located hundreds of miles away, *see infra* at 8 n.4, and these are the precise people Defendants would likely call to testify during an evidentiary hearing or trial to determine whether Plaintiffs' standing theory has merit. Thus, continued litigation in this Division would likely require these nonparties to travel a great distance to participate in any in-court proceeding, which would be costly and burdensome.

Additionally, this burden on nonparties would not be a matter of convenience only; the Court may lack the authority to compel these nonparties to appear before the Court. "Under [F.R.C.P.] 45 . . . a subpoena may command a person to attend a trial, hearing, or deposition 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *SecurityProfiling, LLC v. Trend Micro Am., Inc.*, Case No. 6:16-CV-1165-RWS-JDL, 2017 WL 6816737, at *4 (E.D. Tex. May 12, 2017) (quoting Fed. R. Civ. P. 45(c)(1)(A)-(B)). However, if a nonparty does not reside within 100 miles of the Court, the Court may only compel her appearance before the Court in a narrow circumstance: if she resides in the same State as the Court and she "*would not incur substantial expense.*" *Id.* (emphasis added). Here, it is unclear whether any Plaintiff County is within 100 miles of the Court,[4] and some are over five hundred miles away; *e.g.*,

---

[4]   *See*   https://www.google.com/maps/dir/Live+Oak+County,+TX/601+Rosenberg+Street,   +Galveston,+TX+77550/@28.8436768,-97.5438462,8z/ (Live Oak County, which is located in the Southern   District   of   Texas,   is   roughly   250   miles   from   the   Court); https://www.google.com/maps/dir/McMullen+County,+TX/601+Rosenberg+Street,+Galveston, +TX+77550/@29.0431507,-97.8071755,8z/ (McMullen County is roughly 300 miles from Galveston County);   https://www.google.com/maps /dir/Edwards+County,+TX/601+Rosenberg+Street,+Galveston,+TX+77550/@29.7762908,-98.7400073,8z/   (Edwards   County   is   roughly   400   miles   from   the   Court); https://www.google.com/maps/dir/Kinney+County,+TX/601+Rosenberg+Street,+Galveston,+TX+77550/@29.2204535,-98.6951653,8z/ (Kinney County is roughly 360 miles from the Court) (last visited Aug. 12, 2021).

Hudspeth County is on the opposite side of the State, almost 800 miles away.[5] Thus, the Court lacks absolute subpoena power to compel many key, nonparty witnesses to appear before the Court. The Court could not compel their appearance for a hearing before the Court, and could only compel their appearance for a trial if they would not "incur substantial expense," a standard that may be difficult to satisfy for nonparties who would have to travel hundreds of miles, stay overnight, and potentially miss one or more days of work. This factor supports a transfer to the Western District of Texas or, at a minimum, to another Division within this District that is more easily accessible by potential nonparty witnesses. *See SecurityProfiling*, 2017 WL 6816737, at *5 (Eastern District of Texas transferred a case to the Northern District of Texas, in part, because just "*one* witness" was "subject to the absolute subpoena power of the Northern District of Texas, and no witnesses who are subject to the absolute subpoena power of [the Eastern District of Texas]"); *Miller v. Warren Transp., Inc.*, Civ. A. No. 5:18-CV-00173, 2019 WL 11593056, at *4 (S.D. Tex. Feb. 7, 2019) (transferring case from Laredo Division of the Southern District of Texas to Austin Division of the Western District of Texas because key witnesses were located in Austin, which "is approximately 200 miles from" Laredo, and so the Court "could not compel [the] Austin-based witnesses to appear in Laredo for hearings, and it could compel them to attend trial only if they 'would not incur substantial expense'").

---

[5]     *See*      https://www.google.com/maps/dir/Hudspeth+County,+TX/601+Rosenberg+Street ,+Galveston,+TX+77550/@30.9005505,-102.441476,7z/ (Hudspeth County is over 700 miles from the Court) (Last visited Aug. 12, 2021).

Thus, "the relative ease of access to sources of proof" and "the availability of compulsory process to secure the attendance of witnesses" counsel in favor of a transfer away from this Division. *Volkswagen*, 545 F.3d at 316. By contrast, neither the Complaint nor Plaintiffs' preliminary injunction motion identifies a single affirmative reason why this case should remain here. Plaintiffs do not contend that there are any key personnel within the four counties covered by this Division. Nor do they identify any unique connection between the facts underlying this action and this Division; *e.g.*, they do not show that there is a material amount of immigration enforcement activity in this Division that has been materially impacted by the Priority Framework, and that this impact significantly affects them in their distant counties. Indeed, there is *no* apparent reason for why Plaintiffs chose to proceed in this Division.

Relatedly, the record does not suggest that Plaintiffs would suffer any prejudice from a transfer of this action to either the Western District of Texas, or the Laredo Division or Corpus Christi Division of this District. To the contrary, for multiple Plaintiffs who are likely located hundreds of miles from this Division, there is a greater risk of prejudice in keeping this case within this Division. Accordingly, the *Volkswagen* factors counsel in favor of a transfer of this action to the Western District of Texas. At a minimum, to the extent the Court finds that venue is proper in the Southern District of Texas, *see infra* at 11-13, the Court should transfer the matter to the Laredo Division or Corpus Christi Division of this District.

## II. The Court may also transfer this matter to the Western District of Texas under 28 U.S.C. § 1406.

The Court should transfer this matter to the Western District of Texas because the Southern District of Texas is an improper venue for Plaintiffs' claims under 28 U.S.C. § 1391(e). *See* 28 U.S.C. § 1406(a) ("The district court . . . in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").[6] Specifically, Plaintiffs have failed to establish that any of the Plaintiffs located within the Southern District of Texas has standing to challenge the Memorandum, *see* PI Resp. at 8-15, and a group of plaintiffs may not show that venue is proper in a particular district based on the location of certain plaintiffs who lack standing, *see Miller v. Albright*, 523 U.S. 420, 426-27 (1998) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party.").

To establish that venue is proper in the Southern District of Texas, Plaintiffs refer to two Plaintiff Sheriffs representing two counties located in the Southern District of Texas,

---

[6] To clarify, Defendants are not currently moving to dismiss based on § 1406. This motion exclusively seeks a transfer of this action. To the extent the Court elects to retain this matter, Defendants currently anticipate filing a motion to dismiss.

and also allege that the Foundation includes "ICE officers serving in the Southern District of Texas." Am. Compl. ¶ 41. With respect to the Plaintiff Sheriffs and their respective counties, the only evidence Plaintiffs submitted to support their standing theory concerns just Kinney County, located in the Del Rio Division of the Western District of Texas. *See* PI Resp. at 12-15. Plaintiffs provide no meaningful evidence concerning any of the other parties, including those with an actual or alleged presence in the Southern District of Texas. *See id*. Further, Plaintiffs cannot establish that this Court is a proper venue by referring to Foundation members who serve in the Southern District of Texas,[7] and, in any event, those members (and the Foundation) lack standing, *see id*. at 9-12 (citing *Crane v. Johnson*, 783 F.3d 244, 253-55 (5th Cir. 2015) (finding that ICE officers lacked standing to bring essentially the exact same allegations as those they rely on here).[8] Thus, although

---

[7] For purposes of venue, the Foundation is located at its principal place of business. *See* 8 U.S.C. § 1391(c)(2) ("For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, … if a plaintiff, only in the judicial district in which it maintains its principal place of business."). Here, the Foundation is incorporated in Delaware, *see* Am. Compl. ¶ 30, and there is no indication that its "principal place of business" is in the Southern District of Texas.

[8] Plaintiffs rely on the location of certain Sheriff and County Plaintiffs to establish venue in this District under 28 U.S.C. § 1391(e)(1)(c). *See* Am. Compl. ¶ 41. The events that give rise to this complaint are those that occur in the respective Plaintiff Counties and thus Plaintiffs cannot rely on 28 U.S.C. § 1391(e)(1)(b). Finally, they cannot rely on 28 U.S.C. § 1391(e)(1)(a): Defendants are located in the District of Columbia. *See Greene v. U.S. Postal Serv.*, 745 F. App'x 299 (10th Cir. 2018) ("the 'residence' of a federal agency is ordinarily limited to the District of Columbia") (quoting *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978)); *Buckley v. United States*, No. 1:13-CV-17, 2013 WL 2242995, at *4 (E.D. Tenn. May 21, 2013) ("Merely because a United States Attorney's office is located in this district — as is the case throughout the country — does not mean it is proper for Plaintiffs to file their suit [in that district] under the circumstances."); *Holz v. United States*, No. 3:08-CV-1568-P, 2009 WL 10704725, at *2 (N.D. Tex. Sept. 28, 2009) ("Even if the agencies involved do maintain a regional office in this district . . . this alone is not enough for venue to be proper under section 1391(e)(1)."). Moreover, no ICE employees have a duty station in the Galveston Division. *See* Charles Decl. ¶ 7.

Defendants contend that none of the Plaintiffs have standing, *see id.*, to the extent the Court finds that any Plaintiff has standing to challenge the Priority Framework, it would presumably be Kinney County and its Sheriff—counseling in favor of a transfer to the District in which they reside (the Western District of Texas).

Accordingly, the Court should transfer this action to the Western District of Texas. Further, if the Court finds that only Sheriff Coe and Kinney County have standing, the Court should transfer the matter to the Division in which they are located: the Del Rio Division of the Western District of Texas.

**CONCLUSION**

Whether assessed under § 1404 or § 1406, this Court is not the appropriate forum for Plaintiffs' claims. For the reasons articulated herein, this Court should transfer this Action to the Western District of Texas.

Dated: August 12, 2021
 Respectfully submitted,

 BRIAN M. BOYNTON
 Acting Assistant Attorney General

 BRIGHAM J. BOWEN
 Assistant Branch Director

 */s/ Brian Rosen-Shaud*
 BRIAN C. ROSEN-SHAUD
 Attorney-in-charge
 ME Bar No. 006018
 ADAM D. KIRSCHNER
 IL Bar. No. 6286601
 Senior Trial Counsel
 MICHAEL F. KNAPP
 CA Bar No. 314104
 KUNTAL CHOLERA

13

DC Bar No. 1031523
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 305-7667
Fax: (202) 616-8460
Email: Brian.C.Rosen-Shaud@usdoj.gov
Adam.Kirschner@usdoj.gov
     Michael.F.Knapp@usdoj.gov
     Kuntal.Cholera@usdoj.gov

<u>Mailing Address</u>:
Post Office Box 883
Washington, D.C. 20044

<u>Courier Address</u>
1100 L Street NW
Washington, D.C. 20005

EREZ REUVENI
CA Bar No. 264124
Assistant Director
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
202-307-4293 (telephone)
Email: Erez.R.Reuveni@usdoj.gov

*Counsel for Defendants*

DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
State Bar No. 10131415
S.D. I.D. 7959
Southern District of Texas
1000 Louisiana, Suite 2300 Houston, TX 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
Daniel.Hu@usdoj.gov
*Local Counsel*

**CERTIFICATE OF CONFERENCE**

I certify that undersigned conferred with Plaintiffs' counsel on this motion and

Plaintiffs oppose this motion.

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed

electronically (via CM/ECF) on August 12, 2021.

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD