# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

SHERIFF BRAD COE, *et al*.,

      *Plaintiffs*,

 v.            Case No. 3:21-cv-00168

JOSEPH R. BIDEN, JR., *et al*.,

      *Defendants*.

## BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION
## AND AMERICAN CIVIL LIBERTIES UNION OF TEXAS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 3

    I. PLAINTIFFS' CLAIMS WOULD UPEND THE IMMIGRATION SYSTEM AND ARE FORECLOSED BY *CASTLE ROCK*. ................................................. 3

        A. Plaintiffs' Claims Cannot Be Squared with the Immigration System. ........ 4

        B. The *Castle Rock* Principle Controls this Case ............................................. 6

    II. THE MEMO CANNOT VIOLATE THE INA BECAUSE IT DOES NOT PROHIBIT ANY ENFORCEMENT ACTION. ................................................. 10

    III. EACH OF PLAINTIFFS' STATUTORY CLAIMS SUFFERS FROM ADDITIONAL FATAL FLAWS ........................................................................ 12

        A. Interpreting 8 U.S.C. § 1225(b) to Require Removal Proceedings Would Be Absurd in Light of DHS's Authority to Terminate Such Proceedings ...... 13

        B. 8 U.S.C. § 1226(c) Does Not Require Anything If ICE Does Not Initiate Removal Proceedings ...................................................................................... 14

        C. Nothing in 8 U.S.C. § 1231(a)(5) Requires DHS to Initiate Reinstatement Proceedings. ..................................................................................................... 16

CONCLUSION ................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Barr*,
  951 F.3d 275 (5th Cir. 2020) .................................................................... 7

*Arizona v. United States Dep't of Homeland Sec.*,
  2021 WL 2787930 (D. Ariz. June 30, 2021) ............................................. 7

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................................. 1, 6

*Arizona v. United States*,
  No. 2:21-cv-186 (D. Ariz. Aug. 12, 2021) ........................................... 5, 16

*Burella v. City of Philadelphia*,
  501 F.3d 134 (3d Cir. 2007) ..................................................................... 9

*Cazun v. Att'y Gen.*,
  856 F.3d 249 (3d Cir. 2017) ................................................................... 17

*Chicago v. Morales*,
  527 U.S. 41 (1999) .................................................................................... 9

*Crane v. Johnson*,
  783 F.3d 244 (5th Cir. 2015). ................................................................ 13

*Demore v. Kim*,
  538 U.S. 510 (2003) ................................................................................ 15

*Escoe v. Zerbst*,
  295 U.S. 490 (1935) .................................................................................. 9

*Gonzalez-Caraveo v Sessions*,
  882 F.3d 885 (9th Cir. 2018) .................................................................. 13

*Jama v. Immigr. & Customs Enf't*,
  543 U.S. 335 (2005) ................................................................................ 16

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018). ............................................................................. 14

*Johnson v. Guzman Chavez*,
  141 S. Ct. 2271 (2021) ................................................................................ 16

*Lara-Aguilar v. Sessions*,
  889 F.3d 134 (4th Cir. 2018) ...................................................................... 17

*Matter of E-R-M- & L-R-M-*,
  25 I.&N. Dec. 520 (BIA 2011) ...................................................................... 7

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ...................................................................................... 7

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019) .................................................................................. 15

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................... 6

*Reno v. Arab-Am. Anti-Discr. Comm.*,
  525 U.S. 471 (1999) ................................................................................. 4, 6

*Richbourg Motor Co. v. United States*,
  281 U.S. 528 (1930) ...................................................................................... 9

*Russello v. United States*,
  464 U.S. 16 (1983) ...................................................................................... 14

*Texas v. United States*,
  2021 WL 2096669 (S.D. Tex. Feb. 23, 2021) .................................... 8, 9, 10

*Texas v. United States*,
  2021 WL 723856 (S.D. Tex. Feb. 23, 2021) ............................................... 11

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ........................................................................ 6

*Texas v. United States*,
  No. 6:21-cv-16 (S.D. Tex.) ............................................................................ 5

*Town of Castle Rock, Colo v. Gonzales*
  545 U.S 748 (2005) .............................................................................. passim

*Villa-Anguiano v. Holder,*
   727 F.3d 873 (9th Cir. 2013) ...................................................................... 17

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ...................................................................................... 15

**Statutes**

6 U.S.C. § 202(5) .............................................................................................. 11

8 U.S.C. § 1103(a)(2) ....................................................................................... 11

8 U.S.C. § 1103(a)(4) ....................................................................................... 11

8 U.S.C. § 1225 ................................................................................................... 2

8 U.S.C. § 1225(a)(1) ....................................................................................... 14

8 U.S.C. § 1225(a)(3) ......................................................................................... 8

8 U.S.C. § 1225(b) ...................................................................................... 12, 13

8 U.S.C. § 1225(b)(1)(A) ................................................................................... 5

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................................... 7

8 U.S.C. § 1225(b)(1)(B) ................................................................................... 5

8 U.S.C. § 1225(b)(2)(A) ................................................................... 5, 8, 13, 14

8 U.S.C. § 1226 ................................................................................................. 14

8 U.S.C § 1226(a) ............................................................................................. 14

8 U.S.C. § 1226(c) ...................................................................................... passim

8 U.S.C. § 1229a ............................................................................................... 17

8 U.S.C. § 1231(a) ............................................................................................ 16

8 U.S.C. § 1231(a)(1) ......................................................................................... 5

8 U.S.C. § 1231(a)(1)(A) .................................................................................................. 8

8 U.S.C. § 1231(a)(2) ...................................................................................................... 5

8 U.S.C. § 1231(a)(5) ............................................................................................... passim

12 U.S.C. § 1731b(h) .................................................................................................... 10

14 U.S.C. § 522 .............................................................................................................. 10

15 U.S.C. § 78o(m) ........................................................................................................ 10

15 U.S.C. § 80b-11(i) .................................................................................................... 10

15 U.S.C. § 9074(c)(2) .................................................................................................. 10

18 U.S.C. § 2322 ............................................................................................................ 10

26 U.S.C. § 5557(a) ....................................................................................................... 10

26 U.S.C. § 6021 ............................................................................................................ 10

26 U.S.C. § 7404 ............................................................................................................ 10

31 U.S.C. § 3541(b) ...................................................................................................... 10

31 U.S.C. § 3542(a) ....................................................................................................... 10

31 U.S.C. § 3542(b)(2) .................................................................................................. 10

31 U.S.C. § 3545 ............................................................................................................ 10

33 U.S.C. § 1514 ............................................................................................................ 10

42 U.S.C. § 300h-2(a)(1) ............................................................................................... 10

42 U.S.C. § 300h-2(a)(2) ............................................................................................... 10

45 U.S.C. § 823(j) .......................................................................................................... 10

42 U.S.C. § 1987 ............................................................................................................ 10

42 U.S.C. § 9152(b)(1) .................................................................................................. 10

42 U.S.C. § 9152(b)(2) ................................................................................... 10

49 U.S.C. § 80502(d) ..................................................................................... 10

## Regulations

8 C.F.R. § 239.2(a) ........................................................................................ 13

8 C.F.R. § 239.2(c) ........................................................................................ 13

8 C.F.R § 241.8(a)(1)-(3) .............................................................................. 17

8 C.F.R. § 241.8(a)-(b) .................................................................................. 17

8 C.F.R. § 241.8(e) ........................................................................................ 17

8 C.F.R. § 1239.2(c) ...................................................................................... 13

## Other Authorities

Ben Harrington, Cong. Rsch. Serv., R45158, An Overview of Discretionary Reprieves from
   Removal: Deferred Action, DACA, TPS, and Others (2018) ......................................... 7

Forman Memo., Issuances of Notices to Appear (June 21, 2004),
   http://bit.ly/3f6hQQb ............................................................................... 11

ICE Directive No. 11072.1 (Jan. 10, 2018), https://bit.ly/399Ixzt .................................... 11

ICE, *COVID-19 Pandemic Response Requirements*, (Mar. 16, 2021),
   https://bit.ly/2XpjDZR................................................................................ 4

Johnson Memo., Interim Guidance (Feb. 18, 2021).................................................... 1

Kelly Memo., Enforcement of the Immigration Laws to Serve the National Interest
   (Feb. 20, 2017)...................................................................................... 1

Meissner Memo., Exercising Prosecutorial Discretion (Nov. 17, 2000) ...................... 1,15

Migration Policy Institute, Profile of the Unauthorized Population,
   https://bit.ly/3jTAk74 ............................................................................... 5

Morton Memo., Civil Immigration Enforcement Priorities (Mar. 2, 2011),
    https://bit.ly/3m0nQx8 ...................................................................... 1, 11

Morton Memo., Enforcement at Sensitive Locations (Oct. 24, 2011),
    https://bit.ly/319y3f0 .......................................................................... 11

Morton Memo., Exercising Prosecutorial Discretion (June 17, 2011),
    https://bit.ly/3cfLhgK ........................................................................... 1

Myers Memo., Prosecutorial and Custody Discretion (Nov. 7, 2007) ............................... 1

Syr. Univ., *Immigration Court Cases Jump in June 2021; Delays Double This Year*
    (July 28, 2021), https://bit.ly/3yM7rjq ............................................. 6

U.S. Dep't of Justice, Exec. Office for Imm. Review, Statistical Yearbook 2018,
    https://bit.ly/3eQUmgd ........................................................................ 5

## INTRODUCTION

Plaintiffs' motion seeks to upend the immigration enforcement system as it has existed for decades.  In every presidential administration, ICE and its predecessors have set enforcement priorities using memoranda like the one Plaintiffs challenge here.  *See, e.g.*, Johnson Memo., Interim Guidance (Feb. 18, 2021), Ex. B ("Memo"); Kelly Memo., Enforcement of the Immigration Laws to Serve the National Interest (Feb. 20, 2017), https://bit.ly/3tNxBzk; Morton Memo., Exercising Prosecutorial Discretion, at 1-2 (June 17, 2011), https://bit.ly/3cfLhgK (citing others); Morton Memo., Civil Immigration Enforcement Priorities (Mar. 2, 2011), https://bit.ly/31hkwC9; Myers Memo., Prosecutorial and Custody Discretion (Nov. 7, 2007), https://bit.ly/3rfw8jZ; Meissner Memo., Exercising Prosecutorial Discretion (Nov. 17, 2000), https://bit.ly/3bp1nUC. These policies are a basic component of the immigration system, which implement ICE's "broad discretion" over enforcement.  *Arizona v. United States*, 567 U.S. 387, 396 (2012).

Plaintiffs seek to deny ICE this basic and essential tool.  Their claims would impose a barrage of new and sweeping duties to arrest, detain, and pursue removal proceedings against essentially the entire undocumented population—literally millions of people—orders of magnitude beyond what ICE could do with the limited resources Congress has provided.  The mandatory duties Plaintiffs claim to have identified would thus throw the immigration system into complete chaos and obliterate ICE's ability to set enforcement priorities, as it has done for decades.  Because *everyone* would be a priority,

and because ICE's resources are constrained, the limited set of noncitizens who would be subject to enforcement would be left to chance rather than policy.

These radical claims are foreclosed by Supreme Court precedent. All of Plaintiffs' statutory theories are rooted in their contention that the term "shall" in various INA provisions sets forth an inflexible directive, enforceable by third parties. But as the Supreme Court has held, statutes providing that an agency "shall" engage in an enforcement action generally do *not* create mandatory, enforceable duties. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005). Plaintiffs simply ignore this principle, which is fatal to their case.

Even if Plaintiffs could identify an enforcement mandate, the Memo on its face does not bar *any* enforcement action, and thus cannot bar officials from doing anything that a statute requires. The Memo simply sets general priorities, lets officials make case-by-case decisions, and assigns some decisions to line officers and some to supervisors.

Even apart from being directly at odds with the *Castle Rock* principle, Plaintiffs' statutory claims are deeply flawed. Under a proper understanding of each one, Plaintiffs have identified zero violations. *First*, Plaintiffs claim that 8 U.S.C. § 1225 requires ICE to detain and commence removal proceedings against virtually every undocumented person in the United States. But ICE has well-established discretion to *terminate* removal proceedings; it would be irrational to force ICE to detain thousands of people whose proceedings it can cancel a moment later. *Second*, Plaintiffs suggest that 8 U.S.C. § 1226(c) requires ICE to arrest everyone who has committed a listed offense. But that statute, where it applies, can only require detention *if ICE chooses to initiate removal*

2

*proceedings*, and the statute does not require ICE to initiate proceedings in the first place. *Third*, Plaintiffs argue that 8 U.S.C. § 1231(a)(5) requires ICE to reinstate every prior removal order. But that statute likewise can only require removal *if* ICE makes specific findings in reinstatement proceedings. And nothing in the statute requires ICE to initiate such proceedings—in fact, courts have unanimously concluded that ICE does *not* have to pursue reinstatement proceedings.

The Court should reject the sea change Plaintiffs ask for here. Plaintiffs are asking to take away a standard administrative tool and foist expansive new obligations onto ICE that have never existed before. The motion should be denied.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS WOULD UPEND THE IMMIGRATION SYSTEM AND ARE FORECLOSED BY *CASTLE ROCK*.

Plaintiffs claim that, through a series of INA provisions that use the word "shall," ICE has mandatory and enforceable duties to detain and remove literally millions of people living in the United States. Plaintiffs' position would eliminate all of ICE's enforcement discretion, wreaking havoc on DHS operations because the government's detention and removal capacity is—as Congress well knows and, in fact, has specifically provided—a tiny fraction of what would be needed to take all of the enforcement actions that Plaintiffs claim are mandated. Plaintiffs' interpretation of the immigration laws contradicts the understanding of *every* presidential administration—Democratic and Republican alike—and would render Congress's statutory scheme an unworkable, chaotic, and arbitrary disaster.

3

In reality, none of the statutes invoked by Plaintiffs impose a mandatory duty enforceable by third parties.  The Supreme Court has squarely held that, in the law enforcement context, the word "shall" is not enough to remove an agency's prosecutorial discretion.  There is no basis to depart from that binding principle here.

### A.  Plaintiffs' Claims Cannot Be Squared with the Immigration System.

Congress has provided ICE with limited enforcement resources.  For instance, Congress appropriated funding for 31,500 detention beds in Fiscal Year 2021.  *See* ICE Operations and Support, FY 2022 Congressional Justification, 17, https://bit.ly/2VUYSEX.  And during COVID-19, ICE's detention capacity is even lower, because of the need to maintain health protocols in detention facilities.  *See* ICE, COVID-19 Pandemic Response Requirements, 35 (Mar. 16, 2021), https://bit.ly/2XpjDZR; Berg Decl., Dkt. 33-3 ¶ 11.  As a result of these and other resource limitations, ICE and its predecessors have always de-prioritized large categories of cases.  *See supra* page 1.  As the Supreme Court has repeatedly recognized, ICE's broad discretion over whom to arrest, detain, and place in removal proceedings is essential to the system Congress established.  *See Arizona*, 567 at 396 ("A principal feature of the removal system is the broad discretion exercised by immigration officials."); *Reno v. Arab-Am. Anti-Discr. Comm.*, 525 U.S. 471, 483-84 (1999) ("*AADC*") ("At each stage [of the removal process] the Executive has discretion to abandon the endeavor.").

Plaintiffs' claims would utterly eliminate this discretion.  According to Plaintiffs, ICE *must*, with few exceptions, take enforcement action against enormous categories of people.  They argue ICE must detain and initiate removal proceedings against *all* "aliens

[who] are unlawfully present in the United States."  PI Br. 6 (citing 8 U.S.C.

§§ 1225(b)(2)(A), 1225(b)(1)(A)).  They claim that ICE must detain virtually everyone

throughout those allegedly mandatory proceedings.  PI Br. 6 & n.1 (citing 8 U.S.C. §§

1225(b)(1)(B), 1225(b)(2)(A)).  They claim ICE must arrest and detain everyone

convicted of most crimes.  PI Br.  10-11 (citing 8 U.S.C. § 1226(c)).  They claim ICE

must reinstate every single removal order, whenever it encounters a person who was

previously removed.  PI Br. 12 (citing 8 U.S.C. § 1231(a)(5)).  Relying on similar "shall"

statements, plaintiffs in other cases have similarly asserted that ICE must detain every

person whose removal order becomes administratively final, *see Texas v. United States*,

No. 6:21-cv-16 (S.D. Tex.) (relying on 8 U.S.C. § 1231(a)(2)), and must execute every

removal order within 90 days, *see Arizona v. United States*, No. 2:21-cv-186 (D. Ariz.)

(relying on 8 U.S.C. § 1231(a)(1)).

These supposedly mandatory enforcement categories contain millions and millions

of people.  *See* Migration Policy Institute, Profile of the Unauthorized Population,

https://bit.ly/3jTAk74 (estimating over 10 million undocumented people in the United

States); U.S. Dep't of Justice, Exec. Office for Imm. Review, Statistical Yearbook 2018,

at 12-13 (116,508 removal orders in one year just from immigration judges),

https://bit.ly/3eQUmgd.  It is not logistically possible for ICE to treat *any* of these as

mandatory duties, much less all of them.  Plaintiffs do not even try to explain how ICE

could detain millions of people, or even hundreds of thousands, in the 31,500 beds that

Congress has provided.  Plaintiffs' supposed duties would also add enormous strain to the

country's immigration court backlog.  *See* Syr. Univ., Immigration Court Cases Jump in

5

June 2021; Delays Double This Year (July 28, 2021), https://bit.ly/3yM7rjq.  And if the government is required to engage in maximal enforcement efforts against *everyone*, there is no flexibility to prioritize particular categories or cases that the government may deem especially urgent or important.  The result would be predictable: Given resource limitations, the set of noncitizens who would actually be arrested, detained, and removed would be a matter of happenstance (such as who officers happen to encounter first) rather than policy or thoughtful judgment.  Unsurprisingly, no administration has ever treated any of these as mandatory duties.  Enforcement policies from the Trump, Obama, Bush, and Clinton Administrations contain no mention of them.

### B.  The *Castle Rock* Principle Controls this Case.

In light of the unworkable new system they propose, it should not be surprising that Plaintiffs' radical claims contradict the Supreme Court's and Fifth Circuit's repeated recognition that Congress vested ICE with "broad discretion" in its enforcement decisions—discretion that both courts have emphasized *after* the 1996 statute Plaintiffs contend represented a sea change eliminating that discretion.  *Texas v. United States*, 809 F.3d 134, 165 (5th Cir. 2015) (citing *Arizona*, 567 U.S. at 396); *see AADC*, 525 U.S. at 483-84; *Nken v. Holder*, 556 U.S. 418, 439–40 (2009) (Alito, J., dissenting) (similar).

Plaintiffs' various arguments for mandatory duties share a fundamental interpretive flaw: They all hinge on the word "shall" in different parts of the INA.  In Plaintiffs' telling, each "shall" creates a mandate enforceable against the federal government.  But the Supreme Court has announced a clear rule to the contrary for precisely this situation: In the law enforcement context, "seemingly mandatory"

provisions do not disturb an agency's prosecutorial discretion absent "some stronger indication" than just the word "shall." *Castle Rock*, 545 U.S. at 759-61.  This principle wipes out all of Plaintiffs' statutory claims.

In *Castle Rock*, the Supreme Court rejected the claim that a "shall arrest" provision imposed an enforceable mandate.  Writing for the Court, Justice Scalia emphasized "[t]he practical necessity for discretion," especially in the context of arrest and detention.  *Id.* at 759-62; *see Arizona v. United States Dep't of Homeland Sec.*, 2021 WL 2787930, at *9 (D. Ariz. June 30, 2021) (quoting *Castle Rock*, 545 U.S. at 761, to reject a similar claim based on a "shall" in the INA).  That principle is particularly important in the context of immigration enforcement given how critical discretion is to the overall scheme.  "It is common for the term 'shall' to mean 'may' when it relates to decisions made by the Executive Branch" that pertain to "DHS's exercise of its prosecutorial discretion." *Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. 520, 522 (BIA 2011).[1]  DHS has exercised this discretion without interruption for decades.[2]

---

[1] Notably, *Matter of E-R-M- & L-R-M-* interpreted as *permissive* one of the very provisions on which Plaintiffs rely.  *See* 25 I.&N. Dec. at 522 (holding "shall" in 8 U.S.C. § 1225(b)(1)(A)(i) did not require the application of expedited removal); PI Br. 6 (arguing provision "mandates . . . expedited removal").  Plaintiffs do not even cite this decision, even though the Fifth Circuit recognizes the Board of Immigration Appeals as "the authoritative interpreter" of the immigration laws.  *Ali v. Barr*, 951 F.3d 275, 279 (5th Cir. 2020) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 983 (2005)).

[2] *See generally* Ben Harrington, Cong. Rsch. Serv., R45158, An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others (2018) (providing overview of the historical and contemporary practice).

For obvious reasons, Plaintiffs do not even try to grapple with this principle. The statutes they invoke contain bare "shall" statements that are not meaningfully distinguishable from the provision in *Castle Rock* itself. *See, e.g.*, 8 U.S.C. §§ 1225(a)(3), 1225(b)(2)(A), 1231(a)(5). These provisions simply describe how the enforcement system works, and at most encourage certain kinds of action. None of them imposes a mandate enforceable against the federal government by third parties. Indeed, Plaintiffs do not even cite *Castle Rock*, even though a recent decision rejecting similar arguments was squarely grounded in it. *Arizona*, 2021 WL 2787930, at *9.

They rather rely on an earlier Texas district court decision addressing §1231(a)(1)(A). PI Br. 12-13 (citing *Texas v. United States*, 2021 WL 2096669, *34-35 (S.D. Tex. Feb. 23, 2021)). But *Texas*'s analysis cannot be squared with *Castle Rock* itself. In *Texas*'s view, a "shall" in a law enforcement statute *is* indeed mandatory if "the statute's manifest purpose is to protect the public or private interests of innocent third parties." *Texas*, 2021 WL 2096669, at *34 (treating § 1231(a)(1)(A) as mandatory because of its "purpose to protect 'public or private interests'"). That reasoning would eliminate the *Castle Rock* principle altogether. It is hard to imagine a law enforcement directive whose purpose is to protect neither "the public" nor "innocent third parties."

Indeed, if *Texas*'s rule had applied, *Castle Rock* would have come out the opposite way. *Castle Rock* involved a statute enacted "for the benefit of the narrow class of persons who are beneficiaries of domestic restraining orders." 545 U.S. at 779 (Stevens, J., dissenting); *see id.* at 781 (describing purpose to "reduce batterer recidivism"). The *Castle Rock* majority did not dispute that history or the goal of protecting domestic

8

violence survivors. *See id*. at 759 n.6, 760 (noting legislative history), 762-63. On *Texas*'s reasoning, the statute's obvious purpose to "protect . . . [the] interests of innocent third parties" should have made the arrest provision mandatory and enforceable. *Texas*, 2021 WL 2096669, at \*34. Yet that is the opposite of the Court's holding. Despite the statute's "shall arrest" language and purpose to protect innocent third parties, the Court held that there was no enforceable mandate based on the "well established tradition of police discretion [having] long coexisted with apparently mandatory arrest statutes." 545 U.S. at 760 (citing *Chicago v. Morales*, 527 U.S. 41, 62 n.2 (1999)).

No other court has ever understood *Castle Rock* as subject to a "public or private interests" exception. To the contrary, courts have consistently read *Castle Rock* to mean what it says. *See*, *e.g., Burella v. City of Philadelphia*, 501 F.3d 134, 146 (3d Cir. 2007) (rejecting "attempt to limit the Supreme Court's holding in *Castle Rock*"); *id.* at 152-53 (Ambro, J., concurring in part) (even "deliberate and strong indication[s]" of intent to make arrest mandatory could not overcome *Castle Rock*'s "substantial roadblocks").[3]

Departing from *Castle Rock*'s principle would have far-reaching consequences across the administrative state, even beyond the chaos it would cause for immigration.

---

[3] Texas purported to rely on stray phrases from inapposite decisions that long predated, and were not even mentioned in, *Castle Rock*. Both involved efforts to enforce limits on enforcement, not efforts to require the government to take enforcement action. *Escoe v. Zerbst*, 295 U.S. 490, 492-93 (1935), involved a duty to present arrested probationers to a court, with no mandate of any enforcement activity. And in *Richbourg Motor Co. v. United States*, 281 U.S. 528, 533-35 (1930), the Court enforced a provision requiring the government to pay "innocent lienors" from the proceeds of forfeiture sales, relying on the use of "shall" simply to reconcile two apparently overlapping forfeiture schemes by concluding the government could only proceed under the scheme that protected lienors.

Dozens of statutes spell out agencies' law enforcement duties using the word "shall."  For instance, Congress has provided that the IRS "shall investigate" the failure to pay certain taxes on firearms and other goods, "shall enter the premises" where certain taxable items are held, and "shall" file collection actions for any unpaid estate taxes.  26 U.S.C. §§ 5557(a), 6021, 7404.  Likewise, the EPA "shall issue an [enforcement] order" or "file a civil action" when "any person" violates certain clean-water regulatory requirements. 42 U.S.C. §§ 300h-2(a)(1), (2).  Other examples are legion.[4]  Under *Texas*'s approach, all of these might become mandatory and enforceable, severely eroding agency discretion and expanding the reach of administrative enforcement across the board.

## II.    THE MEMO CANNOT VIOLATE THE INA BECAUSE IT DOES NOT PROHIBIT ANY ENFORCEMENT ACTION.

Plaintiffs do not identify anything on the face of the Memo that even arguably violates any part of the INA.  Nor can they, because the Memo is crystal clear that it does not "prohibit the arrest, detention, or removal of *any* noncitizen," but rather leaves ICE field offices free to make case-by-case decisions on an individualized basis.  Memo at 3 (emphasis added).  Rather than bar any enforcement action, the Memo simply sets

---

[4] *See, e.g.*, 31 U.S.C. §§ 3541(b), 3542(a), 3542(b)(2), 3545 (Treasury "shall" issue certain warrants, seize property, and bring civil actions); 42 U.S.C. § 1987 (U.S. attorneys are "required" to prosecute "all persons" who violate the civil rights laws); 42 U.S.C. §§ 9152(b)(1), (2), 18 U.S.C. § 2322, 49 U.S.C. § 80502(d), 33 U.S.C. § 1514, 45 U.S.C. § 823(j), 12 U.S.C. § 1731b(h) (DOJ "shall commence a civil action" in a variety of contexts); 15 U.S.C. §§ 78o(m), 80b-11(i) (the SEC "shall . . . prosecute and sanction" any violator of the applicable standards of conduct for investment advisers and broker dealers); 15 U.S.C. § 9074(c)(2) (DOT "shall initiate an action" to recover unspent stimulus funds); 14 U.S.C. § 522 (all individuals who appear to be arrestable "shall be arrested" by the Coast Guard).

general priorities and identifies which officials will make which enforcement decisions.

Decisions regarding people within the priority categories may be made by line officers;

decisions regarding others must be made by supervisors.  And nothing in the Memo bars

those supervisors from pursuing enforcement action against any individual.  This is

exactly what Congress has instructed DHS to do: set priorities and assign decisions.  *See*

6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(2), (4); *Texas v. United States*, 2021 WL 723856,

*19 (S.D. Tex. Feb. 23, 2021) (explaining that ICE could "exercise discretion on an

individualized case by case basis").

Plaintiffs have little to say in response.  They claim that supervisory review is

onerous, but such review is perfectly common at ICE under all administrations,[5] and the

Memo provides for bypassing it when it is "impracticable," Memo at 6.  They suggest

that such review is "usually[] futile," Mot. 2, but ICE officials have testified that

supervisors are "regularly" approving enforcement actions beyond the priorities.  *See*

Berg Decl. ¶ 9, *Florida v. United States*, No. 8:21-cv-541, Dkt. 23-3 (S.D. Fla. filed Mar.

23, 2021).  Plaintiffs offer no evidence to contradict that testimony, instead relying

almost entirely on complaint allegations about eight individual described cases, Compl. ¶

54-61—a tiny fraction of the thousands of enforcement actions ICE takes each month.

*See also* Coe Decl. ¶ 17 (mentioning a single case with almost no context).  Given that

---

[5] *See, e.g.*, Forman Memo., Issuances of Notices to Appear (June 21, 2004),
http://bit.ly/3f6hQQb (requiring approval from Special Agent in Charge for specific enforcement
actions); ICE Directive No. 11072.1 (Jan. 10, 2018), https://bit.ly/399Ixzt (approval from Special
Agent in Charge or Field Office Director); Morton Memo., Enforcement at Sensitive Locations
(Oct. 24, 2011), https://bit.ly/319y3f0 (similar); Morton Mar. 2, 2011 Memo, *supra*, at 3.

Plaintiffs include the national ICE officers' union, it speaks volumes that, nationwide, *see* Compl. ¶ 53, Plaintiffs can only muster eight cases, all of which are missing critical context including the date, the person's current immigration situation, and whether subsequent enforcement action was taken.  And even those allegations are unsworn.

Plaintiffs thus present no basis to enjoin the Memo, because they have no real argument that the Memo is *any* sort of prohibition, much less that it prohibits actions required by law.

## III.   EACH OF PLAINTIFFS' STATUTORY CLAIMS SUFFERS FROM ADDITIONAL FATAL FLAWS.

As explained above, all of Plaintiffs' statutory claims are foreclosed by *Castle Rock*.  But even if that were not true, each statute has built-in limitations that further erode Plaintiffs' attempt to recast them as expansive new duties.  In particular, 8 U.S.C. § 1225(b) preserves DHS's plenary authority to *terminate* proceedings; it would make no sense for the statute to require DHS to initiate thousands of proceedings that it could then immediately terminate.  8 U.S.C. § 1226(c) can only require detention *if* DHS chooses to commence proceedings, and nothing in the statute requires DHS to commence proceedings in the first place.  And 8 U.S.C. § 1231(a)(5) can only require reinstatement *after* DHS conducts reinstatement proceedings and makes specific findings, but again, nothing in the statute requires DHS to conduct such proceedings.  Under a proper understanding of each statute, even if they imposed mandatory duties, Plaintiffs have identified no violations of those supposed duties.

12

## A. Interpreting 8 U.S.C. § 1225(b) to Require Removal Proceedings Would Be Absurd in Light of DHS's Authority to Terminate Such Proceedings.

Plaintiffs argue that § 1225(b)(2)(A) requires DHS to detain and commence removal proceedings against most of the undocumented people it encounters.  As explained, under *Castle Rock*, the chain of "shalls" on which Plaintiffs rely for this argument cannot be read as mandatory.  But even beyond *Castle Rock* their argument is deeply flawed.  It fails to account for a basic tenet of immigration law: that once DHS issues a charging document, it is free to terminate proceedings at any time before it files the document in immigration court, and thereafter can seek to terminate cases in other ways, as its regulations have provided for decades.  *See* 8 C.F.R. §§ 239.2(a), 239.2(c), 1239.2(c); *Gonzalez-Caraveo*, 882 F.3d 885, 890 (9th Cir. 2018).  It is indisputable that § 1225(b) does nothing to disturb DHS's long-standing authority to terminate proceedings. *See Crane v. Johnson*, 783 F.3d 244, 249 (5th Cir. 2015) (Section 1225(b) "does not limit the authority of DHS to determine whether to pursue the removal of the immigrant".) Indeed, the statute says nothing at all about terminating proceedings.

Thus, Plaintiffs' claim would create a patently irrational scheme: It would require DHS to detain and charge thousands—if not millions—of people, simply to initiate removal proceedings that DHS has no obligation and no intention to pursue, a result that would waste administrative resources and result in pointless detention.  Even if *Castle Rock* alone did not settle this claim, this absurdity should.

Moreover, even if all of the § 1225 provisions Plaintiffs invoke were indeed mandatory, Plaintiffs *still* have not shown any violations of these supposed duties,

13

because they have not shown that any of the eight individuals they mention in their Complaint were "seeking admission," as the statute requires.  8 U.S.C. § 1225(b)(2)(A). In fact, Plaintiffs say nothing about their current immigration status, mode of entry, or anything else.  The statute repeatedly distinguishes between people who are "applicants for admission," *id.* §1225(a)(1), and people who are "seeking admission," requiring *both* to be true for § 1225(b)(2)(A) to apply.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Congress acts intentionally" when it uses "differing language").  But Plaintiffs make no attempt to show that any of the people they mention are currently seeking admission.  Plaintiffs cannot obtain a sweeping injunction without putting forward clear evidence showing a pattern of actual statutory violations.

## B.  8 U.S.C. § 1226(c) Does Not Require Anything If ICE Does Not Initiate Removal Proceedings

Similarly, § 1226(c) does not impose a freestanding duty to arrest everyone who has committed one of its predicate offenses.  At most, it requires ICE to arrest and detain people with predicate offenses *if* ICE chooses to place them in removal proceedings. And nothing in the statute requires ICE to initiate those proceedings in the first place.

The text of § 1226 makes clear that any duties in subsection (c) only arise when removal proceedings are pending.  Section 1226(a) authorizes arrest and detention only "pending a decision on whether the alien is to be removed from the United States"—i.e. "pending removal proceedings."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 846, 200 L. Ed. 2d 122 (2018).  If ICE does not initiate removal proceedings, the statute provides no authority to arrest or detain.  Section 1226(c), in turn, "limit[s]" the "authority conferred

14

by subsection (a)" by making detention mandatory for people with predicate offenses. *Nielsen v. Preap*, 139 S. Ct. 954, 966, 203 L. Ed. 2d 333 (2019). But even where § 1226(c) applies, detention authority continues to "spring[] from subsection (a)," which is limited to removal proceedings.  *Id.*; *see id.* (rejecting the argument that subsection (c) "establish[es a] separate source[] of arrest and release authority").  The Supreme Court has therefore been clear that § 1226(c) only "mandates detention *during removal proceedings*."  *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (emphasis added); *id.* at 527-28 (same); *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (same).

Nor does § 1226(c) require ICE to initiate removal proceedings in the first place. No court or agency has ever recognized such a duty.  *See* Meissner Memo., Exercising Prosecutorial Discretion, at 6 (Nov. 17, 2000) (explaining that the INS could decline to initiate proceedings against a person who "would be subject to mandatory detention" "*if* served with an NTA") (emphasis added). Indeed, the text of § 1226(c) says nothing at all about any duty to initiate proceedings.  Rather, Congress focused on "*detention* of criminal aliens *during* their removal proceedings" as the "way to ensure their successful removal" after proceedings.  *Demore*, 538 U.S. at 521 (emphasis added).  Indeed, the INS's perceived failure to detain during proceedings was "one of the major causes" of the issues Congress faced.  *Id.* at 519.  It made sense for Congress to address that particular issue while otherwise respecting the Executive's deeply rooted discretion over "whether it makes sense to pursue removal at all."  *Arizona*, 567 U.S. at 396.

It is thus clear that § 1226(c) only requires detention if ICE chooses to place a person in removal proceedings.  Plaintiffs have demonstrated exactly zero violations of

this duty.  They cite a handful of people who allegedly *would have* been subject to

mandatory detention if they were placed in removal proceedings, Compl. ¶ 54-61, but

give no indication that any of them *were*, in fact, placed in proceedings.  And with no

pending proceedings, § 1226(c) imposed no duty to arrest or detain anyone.

### C. Nothing in 8 U.S.C. § 1231(a)(5) Requires DHS to Initiate Reinstatement Proceedings.

Finally, Plaintiffs claim that § 1231(a)(5) "mandates the removal" of every person

with a reinstated removal order.  Mot. 12.  That is wrong under *Castle Rock*, as explained

above.  But even if it were right, Plaintiffs omit a critical point: The statute does not

require anything unless DHS makes specific "find[ings]" through reinstatement

proceedings.  And nothing in the statute requires DHS to initiate reinstatement

proceedings in the first place.  To the contrary, circuits have unanimously held that DHS

is free to decline reinstatement proceedings.[6]

Text and precedent make this clear.  The "shall" in 8 U.S.C. § 1231(a)(5) only

applies "*[i]f* the Attorney General *finds* that an alien has reentered the United States

illegally after having been removed or having departed voluntarily, under an order of

removal." *Id.* (emphases added).  Nothing in the text requires DHS to make that finding

in the first place, and courts do not invent statutory "requirements" that "Congress has

omitted from its adopted text." *Jama v. ICE*, 543 U.S. 335, 341 (2005).

---

[6] Plaintiffs cite *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021), but "*Guzman Chavez* simply did not address the issues before this Court." *Arizona v. United States*, No. 2:21-cv-186, Dkt. 113 (D. Ariz. Aug. 12, 2021) (explaining that *Guzman Chavez* did not address whether § 1231(a) imposes mandatory duties).

The findings referenced in § 1231(a)(5) are made in reinstatement proceedings, which provide an alternative to removal proceedings under 8 U.S.C. § 1229a. Reinstatement proceedings require notice to the noncitizen, an opportunity to provide relevant evidence to contest any element of reinstatement, and appeal to the Board of Immigration Appeals and then the courts of appeals.  8 C.F.R. § 241.8(a)-(b).  The required findings—including that the person "unlawfully entered" and was subject to a prior order, *id.* § 241.8(a)(1)-(3)—require the examining officer to obtain and consider a variety of evidence bearing on the person's identity and immigration history.  And a person in reinstatement proceedings can seek relief from removal if they fear persecution in their home country.  *Id.* § 241.8(e).

Courts have widely recognized that DHS has no obligation to initiate reinstatement proceedings, even if a person has a prior removal order.  *See, e.g.*, *Cazun v. Att'y Gen.*, 856 F.3d 249, 261 (3d Cir. 2017) ("The government has discretion to forgo reinstatement and instead place an individual in ordinary removal proceedings.") (quotation marks omitted); *Villa-Anguiano v. Holder*, 727 F.3d 873, 878-79 (9th Cir. 2013) (reinstatement is neither "automatic" not "obligatory," and ICE agents "may exercise their discretion not to pursue streamlined reinstatement procedures"); *Lara-Aguilar v. Sessions*, 889 F.3d 134, 144 (4th Cir. 2018)  (same).  And if DHS does not initiate reinstatement proceedings, there obviously cannot be any finding that triggers any removal duty in § 1231(a)(5).

Plaintiffs' claim falls apart under these principles.  They cite seven people with prior removal orders, but they do not claim that any of them are in reinstatement

17

proceedings or subject to the relevant findings.  Thus, even if the removal duty were

mandatory, Plaintiffs still fail to identify anyone subject to that duty.

## CONCLUSION

The Court should deny the preliminary injunction.

Dated: August 13, 2021

Spencer E. Amdur*
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-1198
samdur@aclu.org
cwofsy@aclu.org

Omar C. Jadwat
Michael K.T. Tan
Anand Balakrishnan
Noor Zafar
David Chen
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
ojadwat@aclu.org
mtan@aclu.org
abalakrishnan@aclu.org
nzafar@aclu.org
dchen@aclu.org

*pro hac vice forthcoming

Respectfully submitted,

*/s/Kathryn Huddleston*
Kathryn Huddleston
Andre Segura
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS, INC.
5225 Katy Fwy., Suite 350
Houston, Texas 77007
(713) 942-8146
khuddleston@aclutx.org
asegura@aclutx.org

18

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the total number of words in the Amicus

Brief, exclusive of the matters designated for omission, is 5,827 words as counted by

Microsoft Word Software.

*/s/Kathryn Huddleston*
Kathryn Huddleston