# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| SHERIFF BRAD COE, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 3:21-cv-00168 |
| | ) | |
| JOSEPH R. BIDEN, JR., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.      Plaintiffs' Challenge to the Interim Guidance is Moot because that
        Guidance Has No Effect. ...................................................................... 1

II.     The Plaintiff Sheriffs and Counties Lack Standing. ............................... 4

III.    The Foundation Does Not Possess Standing ......................................... 6

IV.     The Court Should Reject Plaintiffs' Efforts to Evade the CSRA ........... 8

V.      Venue Is Improper in this Court ........................................................... 10

VI.     The APA Bars Review of Plaintiffs' Claims ....................................... 10

        A.      The September Guidance is not final agency action. ................. 10

        B.      Immigration enforcement prioritization is committed to agency
                discretion by law. ..................................................................... 13

        C.      Plaintiffs' claims are precluded from review. ........................... 16

VII.    The Court Must Dismiss the President ................................................. 20

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Ali v. Fed. Bureau of Prisons*,
 552 U.S. 214 (2008) ................................................................................................... 19

*Arizona v. U.S. Dep't of Homeland Security*,
 No. CV-21-00186, 2021 WL 2787930 (D. Ariz. June 30, 2021) ................................. 16

*Arizona v. United States*,
 567 U.S. 387 (2012) ................................................................................................... 14

*Bennett v. Spear*,
 520 U.S. 154 (1997) ............................................................................................... 11, 12

*Block v. Cmty. Nutrition Inst.*,
 467 U.S. 340 (1984) ................................................................................................... 17

*Collins v. Mnuchin*,
 938 F.3d 553 (5th Cir. 2019) ...................................................................................... 20

*Crane v. Johnson*,
 783 F.3d 244 (5th Cir. 2015) ................................................................................. 7, 15

*Crane v. Napolitano*,
 No. 3:12-CV-03247-O, 2013 WL 8211660 (N.D. Tex. July 31, 2013) ......................... 8

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*,
 140 S. Ct. 1891 (2020) ............................................................................................... 18

*EEOC v. Peabody W. Coal Co.*,
 610 F.3d 1070 (9th Cir. 2010) .................................................................................... 10

*Ex parte Young*,
 209 U.S. 123 (1908) ................................................................................................... 10

*Florida v. United States*,
 540 F. Supp. 3d 1144 (M.D. Fla. 2021) ..................................................................... 16

*Franklin v. Massachusetts*,
 505 U.S. 788 (1992) ................................................................................................... 20

*Hayre v. Glickman*,
 71 F.3d 875 (5th Cir. 1995) .......................................................................................... 2

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................... 14, 15

*Hernandez-Avalos v. INS*,
    50 F.3d 842 (10th Cir. 1995) ................................................................. 20

*Hinojosa v. Horn*,
    896 F.3d 305 (5th Cir. 2018) ................................................................. 11

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ............................................................................. 18

*Karahalios v. Nat'l Fed'n of Fed. Emps., Local,
1263*, 489 U.S. 527 (1989) ....................................................................... 9

*Larson v. Domestic and Foreign Commerce Corporation*,
    337 U.S. 682 (1949) ............................................................................... 10

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ................................................................................. 1

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ............................................................................... 15

*Melot v. Bergami*,
    970 F.3d 596 (5th Cir. 2020) ................................................................. 13

*Nielsen v. Preap*,
    139 S. Ct. 954 (2019) ....................................................................... 18, 19

*Qureshi v. Holder*,
    663 F.3d 778 (5th Cir. 2011) ................................................................. 12

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ........................................................................ 15, 17

*Robbins v. U.S. Bureau of Land Mgmt.*,
    438 F.3d 1074 (10th Cir. 2006) ............................................................. 10

*Rollins v. Marsh*,
    937 F.2d 134 (5th Cir. 1991) ............................................................. 8, 10

*Sackett v. E.P.A.*,
    566 U.S. 120 (2012) ............................................................................... 11

*Stockman v. Fed. Election Comm'n,*
    138 F.3d 144 (5th Cir. 1998) .................................................................. 17

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ............................................................................... 4

*Tenth St. Residential Ass'n v. City of Dallas,*
    968 F.3d 492 (5th Cir. 2020) .............................................................. 6, 7

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021), *pet. for cert.*, No. 21-10806 (Dec. 13, 2021) .......... *passim*

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ................................................................. 15

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ............................................................................... 9

*Town of Castle Rock v. Gonzales,*
    545 U.S. 748 (2005) .......................................................................... 15, 16

*United States v. Fausto,*
    484 U.S. 439 (1988) .......................................................................... 8, 10

*United States v. Gonzalez,*
    520 U.S. 1 (1997) ................................................................................. 19

*United States v. Texas,*
    14 F.4th 332 (5th Cir. 2021), *vacated em bamc,*
    2021 WL 5578015 (5th Cir. Nov. 30, 2021) .................................. 13, 15, 16

*Wayte v. United States,*
    470 U.S. 598 (1985) .......................................................................... 14, 16

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ............................................................................... 4

**STATUTES**

5 U.S.C. § 559 ............................................................................................ 17

5 U.S.C. § 701 ...................................................................................... 16, 17

5 U.S.C. § 704 ............................................................................................ 11

5 U.S.C. § 2302 .......................................................................................... 9

8 U.S.C. § 1101 ................................................................................................. 20

8 U.S.C. § 1229 ................................................................................................. 17

8 U.S.C. § 1252 ............................................................................................ 17, 18

## OTHER AUTHORITIES

Aaron Nelson, *Kinney County Has Embraced Greg Abbott's Operation Lone
    Star Like Nowhere Else. It's Fueling the Hysteria of Some Locals*,
    Texas Monthly (Oct. 29, 2021),
    texasmonthly.com/news-politics/operation-lone-star-kinney-county/ ........................ 5, 6

Black's Law Dictionary (11th ed. 2019). .......................................................... 19

Memorandum from John Kelly, Sec'y of Homeland Sec., *Enforcement of the
    Immigration Laws to Serve the National Interest* (Feb. 20, 2017) ................................ 13

## INTRODUCTION

Plaintiffs' Second Amended Complaint has several defects, which are not cured by their arguments in response to Defendants' motion to dismiss. As Defendants explained, the Court should dismiss this action in full because all Plaintiffs lack standing, venue is improper in this Court, and review is barred under the Administrative Procedure Act. At the very least, there are several grounds for partial dismissal, including because the Court lacks jurisdiction to consider the claims of the Federation under the Civil Service Reform Act or to enjoin the President.

## ARGUMENT

### I.    Plaintiffs' Challenge to the Interim Guidance is Moot because that Guidance Has No Effect.

Plaintiffs refute a mootness theory that Defendants never advanced. *See* Pls.' Resp. to Mot. to Dismiss 6, ECF No. 66 ("Pls.' Resp.") (arguing that the "case" is not moot). Defendants are not arguing that the entire case is moot, but rather that the claims *against the Interim Guidance* are moot. *See* Defs.' Mot. to Dismiss 12-14, ECF No. 62 ("Defs.' Mot.").[1] Under Article III, "federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). There is no live case or controversy regarding the Interim Guidance because that policy has expired by its own terms and been replaced by the September Guidance. *See* Memorandum from David

---

[1] Though subject to other fatal jurisdictional flaws as explained below, Plaintiffs' claims against the *September* Guidance are not moot. Tangentially, Plaintiffs offer no support for their drive-by statement that the preliminary injunction motion filed against the Interim Guidance "applies" to the September Guidance, Pls.' Resp. 6. Regardless, that has no bearing on this motion to dismiss.

Pekoske, Acting Sec'y of Homeland Sec., *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities*, at 3 (Jan. 20, 2021), ECF No. 33-1 ("Pekoske Memo") (the Interim Guidance would be in effect only until later guidance issued); *Significant Considerations in Developing Updated Guidelines for the Enforcement of Civil Immigration Law*, at 6 (Sept. 30, 2021) ("September Guidance") (providing for Interim Guidance's rescission); *Hayre v. Glickman*, 71 F.3d 875 (5th Cir. 1995) ("After the [plaintiffs] challenged the [agency action] and before the district court could address the merits of that challenge, the circumstances changed: The [new agency action] superseded and replaced the [original agency action]. As a result, the [challenged agency action] evaporated, rendering the [plaintiffs'] complaint moot.").[2]

This case is unlike the Fifth Circuit's recent decision concluding that a challenge to the Secretary's decision to terminate the Migrant Protection Protocols ("MPP") was not moot. *Contra* Pls. Resp. 6 (citing *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) ("*MPP Op.*"), *pet. for cert.*, No. 21-10806 (Dec. 13, 2021)). There, the Secretary's June 1 decision terminated MPP. The district court enjoined that decision, but the Secretary subsequently terminated MPP again on October 29. *MPP* Op., 20 F.4th at 941-42. The court of appeals rejected the government's argument that the challenge to the June 1 decision was moot in light of the October 29 decision. In the court's view, the plaintiffs were challenging the termination decision, and both the June 1 and October 29 memoranda were simply

---

[2] Both the Ninth and Eleventh Circuits recently dismissed as moot appeals in challenges to the Interim Guidance. *Arizona v. United States*, Case No. 21-16118 (9th Cir., Jan. 21, 2022); *Florida v. United States*, Case No. 21-11715 (11th Cir., Dec. 15, 2021).

explanations for that single, underlying decision. *See id.* at 950-51, 956.

The government vigorously disputes the court's characterization of the October 29 decision in that case, and has filed a petition for writ of certiorari with the Supreme Court requesting expedited consideration of the case this Term. *See* Petition for Writ of Certiorari, *Biden v. Texas*, No. 21-954. But in any event, the circumstances in *Texas v. Biden* are plainly distinct from this case, which does not implicate the *Texas* court's fundamental concern that an "administrative agency [might] permanently avoid judicial review by issuing an endless litany of new memos to 'moot' every adverse judicial ruling." 20 F.4th at 942. Even assuming that concern was implicated on the facts of the *Texas* case, it has no application when, as here, an agency action *expires by its own terms before the district court rules.* In addition, the September Guidance could not even conceivably be characterized as "simply explain[ing]" the Interim Guidance, *id.* at 951 (emphasis omitted), since it meaningfully changed the scope and substance of that guidance. First, the September Guidance does not apply to decisions regarding detention. Second, the September Guidance reduced reliance on "bright lines or categories" such as the "presumed priority" categories from the Interim Guidance, and instead adopted a series of mitigating and aggravating factors for officers to consider on a case-by-case basis. *Compare* September Guidance at 3 (rather than "bright lines or categories," establishing that "there can be aggravating factors that militate in favor of enforcement action" and "there can be mitigating factors that militate in favor of declining enforcement action."), *with* Memorandum from Tae Johnson, Acting Dir. of U.S. Immigr. and Customs Enf't, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Feb. 18, 2021), ECF

No. 58-1 ("Interim Guidance") (creating "presumed priority" groups for enforcement).[3]

The Interim Guidance is without effect and has been replaced with a new policy; Plaintiffs' challenge to the Interim Guidance is moot.

## II. The Plaintiff Sheriffs and Counties Lack Standing.

The Plaintiff Sheriffs and Counties fail to show that they have (or will) suffer any injury due to the September Guidance in particular. To establish standing for injunctive relief, plaintiffs must show that they are "under threat of suffering" an "actual and imminent" injury caused by "the challenged action," *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), and that the "threatened injury" is "certainly impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, the Plaintiff Sheriffs and Counties argue that they have experienced, and will continue to experience, increased crime and related costs. But there is no well-pled allegation that any increased crime is attributable to the *September* Guidance. Plaintiffs do not show, for example, that noncitizens who have been spared from enforcement actions due to the September Guidance have committed crimes in the Plaintiff Counties. Regardless, even if some of those noncitizens had been shown to commit certain crimes,

---

[3] Plaintiffs cite repeatedly to an affidavit filed by a member of the Federal Police Foundation, which they have sought to file under seal. Neither Defendants nor their counsel have reviewed the affidavit and so are limited in addressing its allegations. The Court should not permit Plaintiffs to rely on confidential information as a sword while shielding Defendants from learning of the allegations against it, where the motion to seal does not contain any credible information to substantiate affiant's concern for retaliation. *See* Defs.' Opp'n to Pls.' Mot. to Seal, ECF No. 34. Defendants disagree with the mischaracterizations in Plaintiffs' brief that cite to this affidavit, including the description of the "Arrest Authorization Request Tool" utilized by ICE. But, regardless, the mischaracterizations in the affidavit do not bear on the legal issues in this motion.

the September Guidance may still reduce costs due to crime overall: by prioritizing actions against those likely to threaten public safety, the September Guidance may result in the arrest of noncitizens likely to commit more (and more severe) crimes.[4] It is Plaintiffs' burden to show otherwise, and they have not done so.

In response, Plaintiffs first argue that the DHS's recent priority memoranda have resulted in a decrease in enforcement actions. *See* Pls.' Resp. 10-11. But again, there is no indication that those who have been spared from enforcement actions due to the memoranda are the ones committing any crimes in the Plaintiff Counties. Plaintiffs also reiterate that they have experienced an increase in crime. *See* Pls.' Resp. 12-13. But they cannot tie this to the September Guidance. For one, they do not show that the increase in crime is attributable to noncitizens (much less noncitizens present in the counties solely due to the September Guidance). To the contrary, Sheriff Coe has admitted that recent, increased crime "could be part of illegal alien trafficking or it could just be local meth heads." Aaron Nelson, *Kinney County Has Embraced Greg Abbott's Operation Lone Star Like Nowhere Else. It's Fueling the Hysteria of Some Locals*, Texas Monthly (Oct. 29, 2021), https://perma.cc/5MLG-4XEP. Moreover, recent border crossers are priorities for enforcement under the Guidance. September Guidance at 4. In any event, Plaintiffs do not rule out alternative explanations for the increase in crime, including pandemic-related economic conditions. Notably, the lead Plaintiff has admitted that he is encouraging

---

[4] Plaintiffs argue that the standing inquiry is not a balancing exercise, but they concede that the Court may consider offsetting harms if there is a "tight[] nexus" between the alleged "benefits" and the "costs" of the Memoranda. Pls.' Resp. 11. Here, this is a tight nexus: the "benefits" and the "costs" are of the same ilk, namely, crimes committed by noncitizens in the Plaintiff Counties.

residents to report property crimes that previously went unreported. *See id.* Thus, Plaintiffs have failed to establish a causal link between the September Guidance and any injuries.

In any event, this Court could not redress Plaintiffs' injuries because DHS has never been able to arrest or remove all noncitizens whose detention would be covered by §§ 1226(c) and 1231(a). Pls.' Resp. 15-16.[5] Even if the Court vacates the September Guidance, DHS could still choose to adopt a prioritization framework, and there is no indication that what framework DHS would adopt could redress Plaintiffs' alleged injuries.

**III. The Foundation Does Not Possess Standing**

The Foundation has failed to establish standing to challenge the September Guidance, either in its own right (organizational standing), or on behalf of any of its members (associational standing). First, the Foundation cannot establish standing in its own right. To do so, the Foundation must show that it had to expend "significant resources" in a manner that "detract[s] or differ[s] from its routine [] activities." *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020) (citation omitted).

Here, the Foundation does not claim that it invested resources for a purpose that "differs" from its "routine activities." To the contrary, its claimed expenditure to educate its members on relevant legal development falls squarely within its purpose. *See* Second Am. Compl. ¶ 46, ECF No. 59 ("SAC") (Foundation's "purposes" include "informing federal law enforcement officers"). Further, although the Foundation claims that it has

---

[5] Plaintiffs argue that a Court-order simply requiring DHS to comply with the alleged statutory "mandates" at issue would redress their alleged injuries. Pls.' Resp. 15. But Plaintiffs fail to allege that DHS could ever arrest and detain all noncitizens covered by §§ 1226(c) or 1231(a).

*recently* invested most of its time educating its members about the September Guidance, it does not allege that it will *continue* to invest this level of resources on this issue (or specify for how long it will do so), and thus this does not constitute a "significant" resource expenditure. *See Tenth St. Residential*, 968 F.3d at 500 (limited "time spent attending meetings" is not "significant"). The Foundation lacks organizational standing.

The Foundation also cannot establish associational standing based on its members because it fails to show that any of its members have been, or will be, harmed by the September Guidance. In its Response to the Motion to Dismiss, the Foundation relies on a single argument: that immigration officials may be subject to employment sanctions because, under the September Guidance, their enforcement decisions are subject to review. Pls.' Resp. 18-19. But, the Foundation fails to show that any of its members will imminently make immigration enforcement decisions that will be reviewed by their superiors and cause them to be sanctioned in some material way.

The Foundation's associational standing theory, therefore, is foreclosed by *Crane v. Johnson*, where the Fifth Circuit held that immigration officials could not claim a realistic threat of employment sanctions when implementing an immigration policy that vests them with discretion. 783 F.3d 244, 253-55 (5th Cir. 2015) (agents' "discretion" under the policy made it "unlikely that the agency would impose an employment sanction against an employee who exercises [that] discretion to detain an illegal alien."). Here, the September Guidance expressly calls on immigration officials to use their judgment when deciding whether to pursue an enforcement action. *See* September Guidance at 5 ("the guidance leaves the exercise of prosecutorial discretion to the judgment of our personnel").

Accordingly, the Foundation lacks associational standing to challenge the Guidance.

## IV. The Court Should Reject Plaintiffs' Efforts to Evade the CSRA

As Plaintiffs acknowledge, the Civil Service Reform Act governs the federal employer-employee relationship. *See* Pls.' Resp. 20 (acknowledging that "the CSRA governs employer-employee workplace claims"). The CSRA's comprehensive scheme extends beyond just personnel actions. Indeed, Congress created "comprehensive and exclusive procedures for settling work-related controversies between federal civil service employees and the federal government." *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991); *see United States v. Fausto*, 484 U.S. 439, 445 (1988) (the CSRA "replaced [a] patchwork system with an integrated scheme of administrative and judicial review").

Plaintiffs do not even engage with the fundamental point: *any* claim brought by the Foundation on behalf of its members—federal employees (ICE officers) who disagree with the actions of their employer (DHS)—is about that federal employer-employee relationship. They do not dispute that claims brought by the Foundation under its purported associational standing, where any standing would be derived from the injury suffered by ICE employees, is anything different than the claims brought by the ICE officers in *Crane*. *See* Defs.' Mot. 36-37. Rather, they insist that the Foundation is distinct from the ICE employees. This contention misses the entire point of associational standing. Further, to the extent that the concern is that no disciplinary actions have yet taken place, that has no bearing on whether the claim is precluded under the CSRA. In fact, the CSRA covers the entire employment relationship, including any threatened discipline. *See Crane v. Napolitano*, No. 3:12-CV-03247-O, 2013 WL 8211660, at *3 n.2 (N.D. Tex. July 31, 2013)

8

(noting that the CSRA covers "when a supervisory employee takes or threatens to take 'disciplinary or corrective action' against the employee for 'refusing to obey an order that would require the individual to violate a law'") (quoting 5 U.S.C. § 2302(b)(9)(D)); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208-09 (1994) (statute setting forth a "comprehensive review process" and vesting "the court of appeals [with] exclusive jurisdiction over challenges to agency enforcement proceedings" precluded pre-enforcement challenge to the authorizing statute in district court).

As for organizational standing, Plaintiffs protest that the Foundation is not a union. Again, this fails to engage with the nature of the CSRA. Rather, as Defendants previously explained, the comprehensive nature of the CSRA is not limited to individual employee disputes but extends to system-wide disputes, such as those involving unions and unfair labor practices. Defs.' Mot. 38; *see, e.g., Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*, 489 U.S. 527, 533-34 (1989) (holding Congress created an exclusive scheme to address unfair labor practice claims). Here, the Foundation is bringing a claim to fulfill the purported rights of its federal employee members. *See* SAC ¶ 46 ("The purposes of the Federal Police Foundation include, *inter alia*, conducting research, *informing federal law enforcement officers about legal and policy issues affecting their work*, and informing the public about federal law enforcement matters.") (emphasis added); *id.* (claiming ICE officers as members). If federal employees can evade the CSRA's limits by bringing their employment disputes through an organization whose purpose is to protect the rights of the federal employees rather than through their union, that would undermine the CSRA's comprehensive and exclusive scheme for resolving federal employer-employee disputes.

*Fausto*, 484 U.S. at 445; *Rollins*, 937 F.2d at 139. This Court should not countenance such an attempt and should, at the very least, dismiss the claims brought by the Foundation.

## V. Venue Is Improper in this Court

Plaintiffs do not dispute that they cannot establish venue through a plaintiff that lacks standing. Yet that is what Plaintiffs try to do with their belated effort to add Galveston County, but not its Sheriff, to this action. The Second Amended Complaint, like the First, contains no specific, nonconclusory allegation of injury to Galveston, McMullen, or Live Oak Counties. As explained in Defendants' transfer motion, the Court should transfer the case to the Del Rio Division of the Western District of Texas or, alternatively, dismiss it.

## VI. The APA Bars Review of Plaintiffs' Claims

As an initial matter, all of Plaintiffs' claims are brought *only* pursuant to the APA. *Contra* Pls.' Resp. 39-40. Plaintiffs' attempt to rely on *Larson v. Domestic and Foreign Commerce Corporation*, 337 U.S. 682 (1949) and *Ex parte Young*, 209 U.S. 123 (1908) is frivolous. The APA's waiver of sovereign immunity for agency action replaced the legal fiction from *Ex parte Young* that a plaintiff could sue federal officials. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) (Congress "referred disapprovingly to the *Ex parte Young* fiction" in enacting the APA); *see Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1081 (10th Cir. 2006) (the APA generally superseded *Larson*).

### A. The September Guidance is not final agency action.

As Plaintiffs recognize, their challenge may proceed only if the September Guidance is "final agency action" under the APA. *See* Pls.' Resp. 36-39. Plaintiffs conspicuously fail to analyze the MPP decision, where the Fifth Circuit noted that "most

10

agency memos are not final agency action under 5 U.S.C. § 704" and that "for example, a nonbinding priority memo" would be unreviewable on that basis. *MPP* Op., 20 F.4th at 986. As explained above, the September Guidance is a nonbinding priority memorandum, because it neither requires enforcement nor nonenforcement with respect to any particular noncitizen. Instead, it discards the class-based presumed priority groups from the Interim Guidance and authorizes line officers to exercise their discretion on a case-by-case basis after considering the totality of the circumstances.

Plaintiffs otherwise are confused about the relevant legal inquiry and make several unavailing arguments that the September Guidance is "final agency action." First, Plaintiffs appear to concede that the September Guidance would not be final agency action if challenged by noncitizens. *See* Pls.' Resp. 37. But, Plaintiffs argue, it *is* final action when challenged by Plaintiffs. Plaintiffs cite no precedent, and Defendants are aware of none, for this "final for me but not for thee" principle. Instead, whether agency action is final turns only on the nature of the action—whether it both is "the consummation of the agency's decisionmaking process" and determines "rights or obligations," *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)—without regard to plaintiffs' identity.

Second, Plaintiffs contend that the September Guidance is final because the Plaintiffs would otherwise lack an adequate alternative remedy. Pls.' Resp. 37. But the presence of an adequate alternative remedy presents a distinct bar on APA challenges, and is not one raised by Defendants in this litigation. *See Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (distinguishing between final agency action, exhaustion, and adequate alternative remedies); *see also, e.g.*, *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012) (similar).

11

Third, Plaintiffs contend that the action is final because it is (in their view) unlawful. Pls.' Resp. 37-38. This argument turns APA proceedings on their head—Plaintiffs are asking the Court to first determine the merits of their claims and then to decide whether it has jurisdiction to do so. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) ("If there is no final agency action, a federal court lacks subject matter jurisdiction."). Nor does this approach find any basis in precedent—the long-established doctrinal test asks simply whether the challenged action is the "consummation" of the agency's decisionmaking process and determines "rights or obligations." *Bennett*, 520 U.S. at 178.

Fourth, Plaintiffs curiously rebut an argument that "[s]ubsequent events" might "un-finalize a final agency action." Pls.' Resp. 38-39. But Defendants have not previously advanced such an argument, and do not do so here. Rather, Defendants maintain that the September Guidance is not "final" because it does not affect rights or obligations.

On the only question that matters—whether the September Guidance affects rights and obligations—Plaintiffs' sole argument is misplaced. They contend that one "legal consequence" of the September Guidance is that ICE officers "cannot initiate enforcement actions without prior approval." *Id.* at 38. But, the September Guidance does not contain any requirement for preapproval before taking enforcement actions. *See* September Guidance at 4. Rather, "the guidance leaves the exercise of prosecutorial discretion to the judgment of [DHS] personnel." *Id*. at 5. Further, although Defendants disagree with Plaintiffs' characterization of the application of the policy, the characterization is not relevant to the question of whether the Guidance itself is final agency action. Regardless, to the extent there is consultation between supervisors and their subordinates, that is no

different than how ICE has historically operated or what transpires in every workplace. *See* Memorandum from John Kelly, Sec'y of Homeland Sec., *Enforcement of the Immigration Laws to Serve the National Interest*, at 4 (Feb. 20, 2017) ("The exercise of prosecutorial discretion with regard to any alien who is subject to arrest, criminal prosecution, or removal in accordance with law shall be made on a case-by-case basis *in consultation with the head of the field office component*) (emphasis added).[6] Officers have the same rights and obligations as before: to execute their duties consistent with instructions from superiors.

As Defendants explained in their motion, no "legal consequences" flow from the September Guidance, which, by design, gives greater leeway to line officers to exercise the Secretary's enforcement discretion, on a case-by-case basis in light of all the facts. The September Guidance is the quintessential nonbinding priority memorandum that the Fifth Circuit determined would not be final agency action under the APA. *MPP* Op., 20 F.4th at 986. This Court therefore lacks jurisdiction to hear Plaintiffs' APA challenge.

*B. Immigration enforcement prioritization is committed to agency discretion by law.*

As district courts in Florida and Arizona found, along with a unanimous Fifth Circuit stay panel, immigration enforcement prioritization is committed to agency discretion by law.[7] Instead of engaging with those authorities, Plaintiffs rely heavily on the

---

[6] The Court may take judicial notice of this publicly-available, previous DHS policy.

[7] The Fifth Circuit's decision concerned a challenge to the Interim Guidance. The day after the Interim Guidance was rescinded, the en banc court vacated the stay. *See United States v. Texas*, 14 F.4th 332 (5th Cir. 2021), *vacated en banc*, 2021 WL 5578015 (5th Cir. Nov. 30, 2021). The Fifth Circuit's stay order nonetheless still serves as persuasive authority. *See Melot v. Bergami*, 970 F.3d 596, 599 n.11 (5th Cir. 2020) (finding a "thoughtful [circuit court] opinion" persuasive even though it had been "vacated as moot on rehearing").

Fifth Circuit's recent decision in a challenge to a different policy. *See* Pls.' Resp. 30-31 (relying on the MPP decision). That decision is wrong and, as discussed, is currently the subject of a pending petition for writ of certiorari.

But, setting aside the merits of that decision, it has no application in this case. *Texas* characterized the policy at issue there as *nonenforcement*. *See MPP* Op. 20 F.4th at 978-982 (discussing the suspending and dispensing powers). Although the government disagrees with its analysis, the *Texas* court concluded that the rescission of MPP "flout[ed] a statutory command as to an entire class of people" by declining to make programmatic use of DHS's statutory return authority under 1225(b)(2)(C). *Id.* at 984. In this case, in contrast, the September Guidance does not eliminate line officers' discretion to enforce the immigration laws against anyone, much less "an entire class of people." *Id.* Instead, the September Guidance recognizes that DHS does "not have the resources to apprehend and seek the removal of every" "undocumented or otherwise removable noncitizen[] in the United States," September Guidance at 2, and therefore establishes guidance for use of the agency's limited resources by setting priorities for determining *which* noncitizens to apprehend and remove. And, unlike the Interim Guidance, *see MPP* Op., 20 F.4th at 984, the September Guidance does not rest on class-wide categories for enforcement. Rather, it discards affords greater discretion for line officers to make enforcement determinations about noncitizens they encounter who are threats to the public. *See* September Guidance at 2-4. Prioritizing the removal of certain noncitizens falls well within the ambit of the agency's enforcement discretion. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see Arizona v. United States*, 567 U.S. 387, 396

(2012) ("A principal feature" of the Nation's immigration laws "is the broad discretion exercised by immigration officials."); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*") ("At each stage [of the removal process] the Executive has discretion to abandon the endeavor."); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005) (the "deep-rooted nature of law-enforcement discretion" persists "even in the presence of seemingly mandatory commands."). But it is fundamentally different than establishing a rule that line officers may not enforce the immigration laws against a particular class of noncitizens. *See Heckler*, 470 U.S. at 832 (applying presumption against reviewability when agency engages in the "ordering of its priorities").

Other than relying heavily on a decision that is beside the point, and the subject a pending petition for writ of certiorari, Plaintiffs otherwise do not meaningfully engage with Defendants' arguments. Plaintiffs recite their arguments that various statutory provisions that use "shall" are mandatory, notwithstanding Supreme Court precedent to the contrary. *See Castle Rock*, 545 U.S. at 761; *see also Texas* Stay Op., 14 F.4th at 338 ("no court at any level previously has held that sections 1226(c)(1) or 1231(a)(2) eliminate immigration officials' discretion"). Namely, it is a longstanding and uncontroverted principle that the Executive Branch's prerogative to make enforcement decisions falls within the "categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Texas v. United States*, 809 F.3d 134, 165 (5th Cir. 2015) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)); *see Heckler*, 470 U.S. at 831; *Crane*, 783 F.3d at 247 (explaining that "the concerns justifying criminal prosecutorial discretion are 'greatly magnified in the deportation context'") (quoting *AADC*, 525 U.S. at 490).

15

Plaintiffs barely cite, and do not meaningfully distinguish, the key authorities from Defendants' motion. The Supreme Court has explained that the Executive has "broad discretion" in enforcement decisions that is "particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. In *Town of Castle Rock*, a statute provided that law enforcement "shall arrest . . . or . . . seek a warrant" for the arrest of any violator of a restraining order, but the Supreme Court rejected the notion this imposed a mandatory duty because to be "a true mandate of police action would require some stronger indication" of legislative intent than the bare "shall." 545 U.S. at 761*; see also Texas Stay Op.*, 14 F.4th at 339 ("longstanding precedent holding that the use of 'shall' in arrest laws does not limit prosecutorial discretion"); *Florida v. United States*, 540 F. Supp. 3d 1144, 1157 (M.D. Fla. 2021) (Interim Guidance "reflect[s] discretionary agency decisions related to the prioritization of immigration enforcement cases, which are presumptively not subject to judicial review"); *Arizona v. U.S. Dep't of Homeland Security*, No. CV-21-00186, 2021 WL 2787930, at *9 (D. Ariz. June 30, 2021) ("'[A] true mandate of police action would require some stronger indication' from Congress than simply placing the word 'shall' in the legislative command"; § 1231(a) contains "no such stronger indication.") (quoting *Castle Rock*, 545 U.S. at 761). Plaintiffs' challenge to the September Guidance fails because enforcement prioritization is committed to agency discretion and unreviewable.

    *C. Plaintiffs' claims are precluded from review.*

    An action cannot proceed under the APA when another statute precludes judicial review. 5 U.S.C. § 701(a)(1). As Justice Scalia observed, the "theme" of the 1996 amendments to the INA can "fairly be said" to be "protecting the Executive's discretion

from the courts." *AADC*, 525 U.S. at 486. Congress has precluded Plaintiffs' frontal attack on the Executive's statutory and inherent discretion to set enforcement priorities.

Plaintiffs' contention that the APA requires "*express* preclusion for statutes enacted after the APA's enactment in 1946," is legally wrong. *Contra* Pls.' Resp. 31 (citing 5 U.S.C. § 559). The APA, not other legislation, precludes APA claims when (as here) other "statutes preclude judicial review." 5 U.S.C. § 701; *see Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (the APA "confers a general cause of action" but then "withdraws that cause of action" in § 701(a)(1)). Rather than seeking an "exception" to the APA, Defendants simply seek to *apply* the APA, including its provisions limiting judicial review.

"[W]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block*, 467 U.S. at 345. Plaintiffs ignore *Block*'s teaching that "an inference of intent to preclude judicial review under the APA could be drawn when the relevant statute specifically grants the right of review to a particular class of persons not including the plaintiff." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 154 (5th Cir. 1998). Here, Congress has established a carefully reticulated scheme for review by specific individuals at specific times in specific courts. *See generally* 8 U.S.C. §§ 1229, 1252; *cf. Block*, 467 U.S. at 349 (implicit preclusion when "a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons").

But Plaintiffs' arguments regarding specific statutory provisions are also misplaced. Plaintiffs correctly observe that they do not challenge an order of removal, but the Supreme

Court has indicated that § 1252(b)(9) applies equally when a plaintiff challenges "the decision . . . to seek removal," or "the process by which . . . removability will be determined." *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018)) (plurality opinion); *see also Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019) (similar). Both those conditions describe Plaintiffs' challenge here: they object to the Secretary's decision to seek the removal of certain individuals instead of others, and object to what they perceive to be the process by which DHS officials will make those decisions.[8]

Plaintiffs next contend that § 1252(a)(2)(A)(iv)—which provides in clear terms that "no court shall have jurisdiction to review" the "procedures and policies adopted . . . to implement the provisions of section 1225(b)(1)" except in the District of Columbia district court—does not apply because (they now say) the September Guidance does not implicate § 1225(b)(1). But Plaintiffs expressly allege that that the September Guidance implements § 1225(b)(1) in a manner contrary to law, SAC ¶ 103. That challenge may be brought, if at all, only in the District of Columbia. *See* 8 U.S.C. § 1252(e); *id.* § 1252(a)(2)(A)(iv).

Section 1226(e) bars review of Plaintiffs' claims to the extent they relate to § 1226. The Secretary's discretionary decisions—such as his decision to institute enforcement

---

[8] Plaintiffs' citation to and discussion of the Fifth Circuit's decision in *Texas v. Biden* is inapposite: the Fifth Circuit there did not address § 1252(b)(9) at all, and the government here does not rely on § 1252(a)(2)(B)(ii), the provision the Fifth Circuit did address. That the Fifth Circuit's statements were limited to their subjects is evident from the fact that it did not discuss the various provisions of § 1252 that relate to decisions, and challenges to decisions, beyond individual orders of removal. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(A)(iv) (challenges to "procedures and policies"); *id.* § 1252(e)(3) (challenges to the "validity of the system"); *id.* § 1252(e)(3)(A) (challenges to "a regulation, or a written policy directive, written policy guidance, or written procedure").

priorities to guide arrests and removal—are not subject to judicial review insofar as they implicate § 1226. Plaintiffs insist that § 1226(e) proscribes review only of individual enforcement decisions. But that view of the statute appears only in plurality opinions, *e.g.*, *Preap*, 139 S. Ct. at 962 (plurality op.), and such a limitation appears nowhere in the statute, *see id.* at 974-75 (Thomas, J., concurring in part), which by its terms applies broadly to the government's "judgment"—not just its enforcement decisions—"regarding the application of" § 1226. *Id.* at 961 (citation omitted). And, as is apparent in § 1252, which covers policies and procedures, Congress contemplated that some such challenges would arise outside the context of specific enforcement actions.

Finally, § 1231(h) is clear: it bars "any party" from seeking to enforce any provision of § 1231 "against the United States or its agencies or officers or any other person." Plaintiffs abandon, and ask this court to abandon, the evident and plain meaning of the term "any party" as including, well, any party. Instead, they ask the Court to embrace an atextual reading of the statute that reads the words "any party" to mean only a noncitizen with a final order of removal. That reading is implausible. The word "party" means "[o]ne by or against whom a lawsuit is brought." Party, Black's Law Dictionary (11th ed. 2019). Thus, any reading of § 1231(h) to preclude only claims of noncitizens is "inconsistent with the statute's language" because it ignores that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008) (Thomas, J.) (quoting *United States v. Gonzalez*, 520 U.S. 1, 5 (1997)) (emphasis added). It therefore undermines the statutory text to transform the term "any party"—whose plain meaning includes plaintiffs in this

lawsuit—to mean only "certain parties." Elsewhere in the INA, Congress used more limited language—the term "alien"—including throughout § 1231, and assigned it a more limited meaning. *See* 8 U.S.C. § 1101(a)(3); *see also Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1995) (interpreting § 1231(h)'s predecessor provision before recodification). It is significant that Congress did not do so in § 1231(h).

Finally, the same statute refutes any contention that Plaintiffs are within the zone-of-interests of § 1231. As Plaintiffs recognize, that inquiry forecloses an APA action whenever "it cannot reasonably be assumed that Congress authorized that plaintiff to sue." Pls.' Resp. 36 n.8 (quoting *Collins v. Mnuchin*, 938 F.3d 553, 574 (5th Cir. 2019)). Section 1231(h) is clear: Congress did not authorize "any party" to sue to enforce § 1231.

## VII. The Court Must Dismiss the President

Plaintiffs are wrong that a Court may enjoin the President. *Contra* Pls.' Resp. 40. "[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992). In any event, Plaintiffs admit that the court lacks jurisdiction to direct the discretionary actions of the President. Pls.' Resp. 40. For the reasons explained above, immigration enforcement is a discretionary authority of the President, so the Court should grant Defendants' motion to dismiss President Biden.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Second Amended Complaint.

Dated: January 26, 2022     Respectfully submitted,

            BRIAN M. BOYNTON
            Acting Assistant Attorney General

            BRIGHAM J. BOWEN
            Assistant Branch Director

            */s/ Brian Rosen-Shaud*
            BRIAN C. ROSEN-SHAUD
            Attorney-in-charge
            ME Bar No. 006018
            ADAM D. KIRSCHNER
            IL Bar. No. 6286601
            Senior Trial Counsel
            MICHAEL F. KNAPP
            CA Bar No. 314104
            KUNTAL CHOLERA
            DC Bar No. 1031523
            Trial Attorneys
            United States Department of Justice
            Civil Division, Federal Programs Branch
            Tel: (202) 305-7667
            Fax: (202) 616-8460
            Email: Brian.C.Rosen-Shaud@usdoj.gov
               Adam.Kirschner@usdoj.gov
               Michael.F.Knapp@usdoj.gov
               Kuntal.Cholera@usdoj.gov

            Mailing Address:
            Post Office Box 883
            Washington, D.C. 20044

            Courier Address
            1100 L Street NW
            Washington, D.C. 20005

            EREZ REUVENI
            CA Bar No. 264124
            Assistant Director
            U.S. Department of Justice
            Civil Division, Office of Immigration Litigation
            P.O. Box 868, Ben Franklin Station
            Washington, D.C. 20044
            202-307-4293 (telephone)

Email: Erez.R.Reuveni@usdoj.gov

*Counsel for Defendants*

DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
State Bar No. 10131415
S.D. I.D. 7959
Southern District of Texas
1000 Louisiana, Suite 2300 Houston, TX 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
Daniel.Hu@usdoj.gov

*Local Counsel*

22

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed

electronically (via CM/ECF) on January 26, 2022.

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD