IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SHERIFF BRAD COE, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Civil Action No. |
| v. ) | 3:21-CV-00168 |
| ) | |
| JOSEPH R. BIDEN, JR., *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO RECONSIDER**

On February 22, 2022, Plaintiff Texas sheriffs, Texas counties, and the Federal Police Foundation, ICE Officers Division, filed a Motion to Reconsider. Plaintiffs did so because on the previous day this Division of the Southern District of Texas had issued a summary order denying Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. 7). The order said denial was appropriate "[b]ecause this same issue is currently before the Fifth Circuit." As pointed out in Plaintiffs' Motion to Reconsider, however, that statement did not consider two things: (1) the two cases did *not* involve the same issue, as the Victoria Division held in denying the motion to consolidate the two cases; and (2) the other case was *not* before the Fifth Circuit.

In their Response, filed on March 2, 2022, (Doc. 76) Defendants did not even mention, much less respond to, the two bases for Plaintiffs Motion to Reconsider. Rather, Defendants non-responsive Response discussed a different subject entirely: they

1

argued that this case was rendered moot when Defendants issued their September 30 Memorandum.

However, Plaintiffs have already rebutted Defendants' mootness claim thoroughly, with extensive affidavit evidence explaining how the September 30 Memorandum has changed nothing, with respect to the unlawful procedures set in motion by the February 18 Memorandum.  Resp. to Mot. to Dismiss (Doc. 66), at 2-9.  Defendants completely ignore the facts on the ground showing that September 30 Memorandum is merely a continuation of the February 18 Memorandum.  The September 30 Memorandum has not changed anything of substance in the day-to-day operations of ICE.  Most importantly, all of the violations of federal law at the center of this case are continuing; in every instance where federal law says that ICE officers "shall" detain or remove an illegal alien, Defendants continue to replace the statutory command with a discretionary regime.

The vast majority of preapproval requests continue to be denied, even in cases where federal statute commands that detention or removal "shall" occur.  Federal Police Foundation Jan. 2022 Aff. ¶ 11.  This has not changed since the issuance and implementation of the September 30 Memorandum.  Before the January 20 and February 18 Memoranda, it was the normal practice for ICE officers to place detainers on (and remove) virtually all fugitive aliens—those who were already subject to a removal order—discovered by ICE.  Doing so is required by 8 U.S.C. § 1231(a)(1).  That practice did not resume with the issuance of the September 30 Memorandum or its implementation.  *Id*. ¶ 17.  Similarly, ICE's unlawful practice of declining to detain and deport illegal alien criminals being released from prison facilities continues.  After the

January 20 and February 18 Memoranda were issued, ICE officers were no longer permitted to detain and remove such aliens—even if 8 U.S.C. § 1226(c)(1) required the detention of the criminal alien. The September 30 Memorandum changed nothing in this regard. FPF Jan. 2022 Aff. ¶ 18. And the list goes on. For a full explanation of all of Defendants' unlawful practices that continue under the September 30 Memorandum, see Plaintiffs' Response to Defendants' pending Motion to Dismiss (Doc. 66), at 2-9.

Defendants' threadbare mootness claim also fails to recognize that the September 30 Memorandum was incorporated into Plaintiffs' Motion for Preliminary Injunctive Relief, when Plaintiffs expressly requested that the same arguments should be applied to any successor Memorandum, and that preliminary injunctive relief should be granted "restraining and enjoining Defendants from implementing or enforcing the February 18 Memorandum, or its predecessor January 20 Memorandum, Section B, *or any similar successor Memorandum*." Pl. Mot. for Prelim. Inj. (Doc. 7), at 30 (emphasis added).

Perhaps most importantly, Defendants' theory that one executive memorandum can suffice to moot a case dealing with a similar executive memorandum was unequivocally rejected by the Fifth Circuit in *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021). Defendants' theory would allow the government to evade judicial review solely by issuing a new memo. The Fifth Circuit squarely rejected the government's whack-a-mole defense:

> In the Government's view, posting a new PDF document on the internet can moot a case as easily as a statute that's undergone bicameralism and presentment. … To describe the Government's position is demonstrate its absurdity." *Id*. at 956-57. A case is moot if 'it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id*. at 958 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). "But when a government repeals the challenged action and

3

> replaces it with something substantially similar, the injury remains. In such a case, the court can still 'grant … effectual relief … to the prevailing party,' *Knox*, 567 U.S. at 307 (quotation omitted), and the case is not mooted.

*Id*. For the same reasons, the requirements of mootness are not met here. The injuries caused by the Defendants' non-detention and non-removal of criminal aliens remain; the September 30 Memorandum is the same as the February 18 Memorandum in replacing statutory mandates with a discretionary regime, and this Court can still grant effectual relief to Plaintiffs.

Finally, it should be pointed out that on March 11, 2022, ICE Defendants published their long-overdue FY 2021 annual report. At the beginning of the report *ICE states exactly what Plaintiffs have been arguing—that the three Memoranda should be seen "together" as one continuous series, and that the Memoranda have attempted to replace statutory commands with a discretionary system*:

> ICE's Office of Enforcement and Removal Operations (ERO) rebalanced its approach to civil immigration enforcement following *a series of memoranda dated January 20, 2021, February 18, 2021, and September 30, 2021. Together*, these memoranda refocused the agency's civil immigration enforcement efforts on the greatest threats to national security, public safety, and border security, while empowering career law enforcement officials in the field to make *discretionary decisions* about which noncitizens to arrest, detain, and remove.

ICE Fiscal Year 2021 Annual Report, March 11, 2022, summary, *available at* https://www.ice.gov/features/2021-year-review (emphasis added). Defendants' counsel are saying one thing, but Defendants themselves are saying something else.

The ICE FY 2021 Annual Report contains another admission that is directly relevant to this case. Plaintiffs have presented abundant affidavit evidence that Defendants' ignoring of mandatory statutory commands to remove certain aliens has resulted in a precipitous decline in removals. In response, Defendants disingenuously suggested that they simply replaced the removal of some aliens with the removal of other aliens. *See* Def. Resp. to Mot. for Prelim. Inj. (Doc. 33), at 13. That assertion is now shattered. In FY 2021, ICE removed only 59,011 noncitizens. ICE FY 2021 Annual Report, at 9, *available at* https://www.ice.gov/doclib/eoy/iceAnnualReportFY2021.pdf. That number is down from 185,884 in FY 2020. ICE FY 2020 Annual Report, at 4, *available at* https://www.ice.gov/doclib/news/library/reports/annual-report/iceReportFY2020.pdf. Stated differently, in FY 2022 ICE removed only 31.7% of the number of aliens it removed in FY 2021. Moreover, most of those removals occurred before Defendants' unlawful policy was implemented: "Of the 59,011 total removals of noncitizens that took place during FY 2021, [only] 28,677 were removed on or after February 18, 2021, when ICE began to track the interim civil immigration enforcement priorities." ICE FY 2021 Annual Report, at 9. In short, the ICE FY 2021 Annual Report demonstrates that Defendants' unlawful policy caused a massive decline in removals. And Defendants' refusal to initiate removals where federal law mandates removal is a subject that is not addressed in *Texas v. United States*, as the Victoria Division of this Court held when declining to consolidate the two cases. *Texas v. United States*, Case 6:21-cv-00016, Doc. 75, at 7-8 (July 26, 2021).

WHEREFORE, Plaintiffs respectfully request that the Court reconsider Plaintiffs' Motion for Preliminary Injunctive Relief.

Dated:  March 12, 2022	By: s/ Kris W. Kobach
**Kris W. Kobach** (*Attorney-in-charge*)
Kansas Bar No. 17280, admitted *pro hac vice*
Alliance for Free Citizens
P.O. Box 155
Lecompton, Kansas 66050
Telephone:  913-638-5567
kkobach@gmail.com


**Brent P. Smith**
Texas Bar No. 24080722, admitted *pro hac vice*
County Attorney, Kinney County, Texas
P.O. Box 365
Brackettville, Texas 78832
Telephone: 830-563-2240
bsmith@co.kinney.tx.us

**Christopher J. Hajec**
D.C. Bar No. 492551, admitted *pro hac vice*
Immigration Reform Law Institute
25 Massachusetts Avenue, N.W.
Suite 335
Washington, D.C. 20001
Telephone:  202-323-5590
info@irli.org

**Kimberly Kreider-Dusek**
Texas Bar No. 50511919
County Attorney, McMullen County, Texas
P.O. Box 237
Tilden, Texas 78072
kimberly.dusek@mcmullencounty.org

**Douglas Poole**
Texas Bar. No. 16115600
S.D. Texas Bar. No. 619
McLeod, Alexander, Powel, & Apffel, P.C.

6

802 Rosenberg
Galveston, Texas 77553
Telephone: 409-763-2481
dwpoole@mapalaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that this Reply was filed electronically and served on Defendants via the Court's CM/ECF system on this 12th day of March 2022.

                                                  /s Kris W. Kobach
                                                  KRIS W. KOBACH