# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| BRAD COE, *et al.*, | )<br>) |
| *Plaintiffs*, | )<br>) |
| v. | )   Civil Action No.<br>)   3:21-CV-00168<br>) |
| JOSEPH R. BIDEN, JR., *et al.*, | )<br>) |
| *Defendants*. | ) |

# PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE
# AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## INTRODUCTION

On July 14, 2022, this Court stayed all proceedings in this case until a final decision was issued in *Texas v. United States*, 40 F. 4th 205 (5th Cir. 2022)—a case that involved some, but not all, of the claims present here and was at the time pending before the Fifth Circuit. The Supreme Court granted certiorari before judgment and rendered its decision in the case on June 23, 2023. *United States v. Texas*, 599 U.S. 670, 143 S. Ct. 1964 (2023). In that decision, the Supreme Court held that the States of Texas and Louisiana lacked standing to bring their claims regarding federal statutes that mandated the *arrest* of certain illegal aliens. But the Supreme Court also suggested that standing may exist to bring a similar challenge if any one of five circumstances were present. 143 S. C at 1973-74. One of those circumstances is a case concerning the statutory obligation to *detain* (as opposed to arrest) certain illegal aliens. *Id*. at 1974. The claims in the instant case relating to the mandatory detention of certain aliens present at least one such circumstance.

In addition, in the case of *Biden v. Texas*, 142 S. Ct. 2528 (2022), the Supreme Court interpreted the meaning of 8 U.S.C. § 1252(f)(1), which states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter…." The Supreme Court held that the district court did not possess the authority to issue injunctive relief in the case. 142 S. Ct. at 2538-40. That holding applies here as well.

On October 11, 2023, Defendants requested an order to show cause why this action should not be dismissed in light of the decision in *United States v. Texas*—a request which Plaintiffs did not oppose. On October 18, 2023, this Court ordered Plaintiffs to show cause.

In the wake of these recent Supreme Court decisions, Plaintiffs concede that they no longer possess standing to bring claims relating to the mandatory duty to *arrest* or to *remove* certain aliens. Plaintiffs also concede that this Court does not have the authority to issue injunctive relief. However, in the wake of *United States v. Texas*, Plaintiffs do possess standing to bring claims relating to the mandatory duty to *detain* certain illegal aliens. It is also clear that this Court retains the authority to issue non-injunctive forms of relief in this case.

If this Court agrees that *United States v. Texas* does not undermine Plaintiffs' claims regarding the mandatory detention of certain aliens, then this Court should permit Plaintiffs to amend their Second Amended Complaint and sever those claims on which Plaintiffs concede that they no longer possess standing and to sever the prayer for injunctive relief in this Court. This Court should then proceed to adjudicate the remaining claims which Plaintiffs possess standing to bring, consistent with *United States v. Texas*.

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Concede That They No Longer Possess Standing to Bring Claims Related to the Arrest or Removal of Certain Illegal Aliens

Defendants issued a series of three interrelated, duplicative Memoranda on January 20, 2021, February 18, 2021, and September 30, 2021, drastically restricting the ability of federal immigration officers to enforce immigration laws. The February 18 Memorandum gave specificity to the general terms of the January 20 Memorandum and was designated "interim guidance" which would eventually be replaced, and was replaced by the September 30 Memorandum, which established Guidelines for enforcing immigration

laws.[1]  These Guidelines instruct immigration officers to weigh non-statutory factors before exercising discretion in deciding whether to take immigration enforcement actions—actions including the arrest, detention, and removal of illegal aliens.

Plaintiffs contend that the Guidelines are contrary to federal law because they make certain enforcement actions that are mandated by statute into discretionary actions. Plaintiffs originally challenged the restriction of all three facets of immigration enforcement—arrest, detention, and removal.  The contemporaneous *United States v. Texas* case was more narrowly focused on only the arrest of certain criminal and removable aliens.  That distinction, among others, led Judge Tipton to deny Defendants' motion to consolidate the two cases on July 26, 2021.  *Texas v. United States*, Case 6:21-cv-00016, Doc. 75.

### A.     Standing Regarding the Arrest of Certain Aliens

Now that the United States Supreme Court has ruled in that case, it has become clear that Plaintiffs in the instant case do not possess standing to bring claims regarding the *arrest* or *prosecution* of illegal aliens.  As the Supreme Court held: "The States want the Federal Judiciary to order the Department to alter its arrest policy so that the Department arrests more noncitizens.  The threshold question is whether the States have standing under Article III to maintain this suit.  The answer is no." 143 S. Ct. at 1969-70.  The Court rested its

---

[1] On September 30, 2021, Defendant DHS Secretary Alejandro Mayorkas issued a Memorandum entitled "Guidelines for the Enforcement of Civil Immigration Laws," available at https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf ("September 30 Memorandum").  The September 30 Memorandum stated that it would take effect on November 29, 2021, and would on that date serve to rescind the January 20 and February 18 Memoranda. *See id*. at 6.

decision principally on the precedent of *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), stating that "[t]he Court's Article III holding in *Linda R.S.* applies to challenges to the Executive Branch's exercise of enforcement discretion over whether to arrest or prosecute." *Id*. at 1970 (internal citations omitted). The Court reiterated that it was focused on Executive Branch policies relating to arrest: "The States' novel standing argument, if accepted, would entail expansive judicial direction of the Department's arrest policies." *Id*. at 1973. Accordingly, Plaintiffs concede that in light of *United States v. Texas*, standing no longer exists with respect to claims concerning the statutory duty to arrest certain aliens. Plaintiffs hereby withdraw those claims related to the mandatory arrest of certain illegal aliens under 8 U.S.C. 1226(c).[2] Specifically, Plaintiffs withdraw the claims relating to their second cause of action, found at ¶¶ 166-173 of the Second Amended Complaint.

### B.  Standing Regarding the Removal of Certain Aliens

In contrast to the arrest of aliens (where standing is now clearly lacking), the Supreme Court in *United States v. Texas* was less clear about whether standing exists to bringing a case regarding the mandatory duty to *remove* certain illegal aliens. The Supreme Court did suggest, however, that standing would not exist to bring such a claim regarding removal. The Court at several points referred to the lack of standing to challenge executive policies regarding "whether to arrest or prosecute." 143 S. Ct. at 1970 (citing *Linda R.S.* at 617, 619). The Court also stated that "[t]hat principle of enforcement discretion over

---

[2] "The Attorney General shall take into custody any alien who …." 8 U.S.C. 1226(c)(1). The same claim was asserted by the Plaintiff States in *United States v. Texas*, and the Court concluded that they lacked standing to bring the claim. *See* 143 S. Ct. at 1970-71.

arrests and prosecutions extends to the immigration context…." *Id.* at 1971.  Although the removal of an illegal alien is a civil action and is distinct from the criminal prosecution of an illegal alien, the Court implied that removal decisions are akin to prosecutions, at least for the purposes of its standing analysis.

Given the above-quoted language in the *United States v. Texas* opinion, and in the interest of pressing forward only with those claims on which Plaintiffs clearly possess standing, Plaintiffs also withdraw their claims relating to the statutory duty to remove certain aliens.  Those claims fall under 8 U.S.C. § 1231(a),[3] and represent Plaintiffs' third cause of action, found at ¶¶ 174-181 of the Second Amended Complaint.

## II.  The Supreme Court Left Open the Door for Challenges to Detention Policies

The Supreme Court did not foreclose all state and local challenges to the Executive Branch's immigration policies.  On the contrary, the Supreme Court listed five exceptions where state or local plaintiffs could possess standing such policies, assuming that the other Article III standing requirements were satisfied.

One of those exceptions concerns detention policies.  In the words of the Supreme Court:

> *Fifth*, policies governing the continued detention of noncitizens who have already been arrested arguably might raise a different standing question than arrest or prosecution policies. Cf. *Biden v. Texas*, 597 U.S. ___ (2022).  But this case does not concern a detention policy, so we do not address the issue here.

---

[3] 8 U.S.C. § 1231(a)(1)(A) requires the removal of an alien who is subject to a final order of removal.  The executive branch "shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(5) requires the removal of an alien who has reentered the United States illegally after having been removed: "[T]he alien shall be removed under the prior order at any time after the reentry."

143 S. Ct. at 1974 (emphasis in original). Unlike the State plaintiffs in *United States v. Texas*, Plaintiffs in the instant case raise claims alleging that Defendants are failing to detain certain aliens after arrest in contravention of federal law that mandates such detention.

Therefore, Plaintiffs seek to proceed with their claims relating to the mandatory detention of aliens. Specifically, Plaintiffs' first cause of action concerns the mandatory detention of illegal aliens who have been arrested and inspected by immigration officers. Congress has mandated that "if [an alien] is not *clearly and beyond a doubt* entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see also* 8 U.S.C. §§ 1225(b)(1)(B)(ii) (providing that, if it is determined that an alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum."); 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1963-66 (2020) (discussing Congress's expedited removal and detention scheme). Plaintiffs' claim with respect to detention of aliens that have been arrested (or, in the parlance of *United States v. Texas*, are being prosecuted) lies at the center of this case. And, as the Supreme Court suggested, "policies governing the continued detention of noncitizens who have already been arrested" presents a very different standing question. 143 S. Ct. at 1974.

Plaintiffs seek a declaration by this Court (and potential injunctive relief by the Supreme Court) that Defendants' decision to release aliens apprehended at the border, a decision that is made discretionary by the Guidelines, is contrary to the statutory detention mandate. Section 1225(b) forbids catch-and-release policies, requiring immigration officers instead to detain any alien that they arrest and inspect if the officer determines that the alien is not entitled to be admitted to the country. The Supreme Court in *Texas* stressed that its holding does not cover such claims:

> our Article III decision today should in no way be read to suggest or imply that the Executive possesses some freestanding or general constitutional authority *to disregard statutes requiring or prohibiting executive action*. Moreover, the Federal Judiciary of course routinely and appropriately decides justiciable cases involving statutory requirements or prohibitions on the Executive.

143 S. Ct. at 1974-75 (emphasis added). Plaintiffs' causes of action concerning the detention mandate in 8 U.S.C. § 1225(b) therefore falls within this exception to *United States v. Texas*.

### III. <u>Injunctive Relief</u>

Shortly before this Court issued its stay in the instant matter to await a final decision in *United States v. Texas*, the Supreme Court issued its opinions in *Garland v. Aleman Gonzales*, 596 U.S. ___ (2022) and *Biden v. Texas*, 597 U.S. ___; 142 S. Ct. 2528 (2022). In those cases, the Court interpreted the meaning of 8 U.S.C. § 1252(f)(1), which states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter," which part includes the statutes at issue in this case.

The Supreme Court in *Biden v. Texas* held that, while that section does deprive a district court of the authority to issue injunctive relief in such a case, it does not completely deprive a district court of jurisdiction to hear the case. In the words of the Supreme Court, "section 1252(f)(1) withdraws a district court's 'jurisdiction or authority' to grant a particular form of relief. It does not deprive the lower courts of all subject matter jurisdiction over claims brought under sections 1221 through 1232 of the INA." *Biden v. Texas*, 142 S. Ct. at 2539. The Court stopped short of explaining exactly how this was to work in practice going forward. Presumably, a party seeking both declaratory relief and injunctive relief regarding the covered statutes must include both forms of requested relief in its complaint filed with the district court—but with the caveat that injunctive relief is being sought only from the Supreme Court in the event that the case makes its way there.

In the case at bar, Plaintiffs originally sought injunctive and declaratory relief from this Court, as well as vacatur of the relevant Memorandum, with the understanding that this Court possessed the authority to grant all three forms of relief. After the Supreme Court's decisions in *Garland v. Aleman Gonzales* and *Biden v. Texas*, that understanding is no longer correct. Accordingly, Plaintiffs now seek relief from this Court that is more limited in scope—specifically declaratory relief and vacatur.

Plaintiffs inability to seek injunctive relief in this Court does not affect the redressability of their claims. As Justice Alito observed in *Texas*, "setting aside [or vacatur of] the Final Memorandum satisfies the redressability requirement." 143 S. Ct. at 1995 (Alito, J. dissenting). As Justice Alito noted, *see id.*, in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court held that a declaratory judgment regarding the

lawfulness of Executive Branch action satisfied redressability because "it [was] substantially likely that the President and other executive . . . officials would abide by an authoritative interpretation" of the law "even though they would not be directly bound by such a determination." *Id.* at 803 (opinion of O'Connor, J.). While only four of eight Justices finding standing in *Franklin* formally joined this explanation, *see* 505 U. S., at 824, n. 1 (Scalia, J., concurring in part and concurring in judgment), the Court subsequently ratified this reasoning. *See Utah v. Evans*, 536 U. S. 452, 460 (2002).

### IV. Plaintiffs Seek Leave to Amend and Narrow their Complaint

Because of these recent decisions of the Supreme Court, Plaintiffs seek to jettison their prior causes of action relating to the arrest and removal of certain aliens and to limit the scope of relief sought. Such changes are significant enough to warrant a revision of the complaint in this case. These revisions will also clarify and focus the case for the convenience of the Court and the parties.

The standard for granting leave to amend a complaint is extremely permissive. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765 (5th Cir. 1999). Leave to amend should be granted in the instant matter, so that the complaint states only those claims for which standing exists and seeks only the relief that this Court may grant.

-9-

Defendants oppose Plaintiffs' request to amend the second amended complaint and intend to file a written opposition within 21 days.

## CONCLUSION

For the foregoing reasons, Plaintiffs consent to the dismissal of their claims relating to the statutory duties to arrest and to remove certain aliens. But Plaintiffs seek to proceed with their claims relating to the statutory duty to detain certain aliens. Plaintiffs also ask this Court for leave to file a Third Amended Complaint.

Respectfully submitted,

Dated: November 10, 2023   By: s/ Christopher J. Hajec
**Christopher J. Hajec** (Attorney in charge)
D.C. Bar No. 492551, admitted *pro hac vice*
Immigration Reform Law Institute
25 Massachusetts Avenue, N.W.
Suite 335
Washington, D.C. 20001
Telephone: 202-323-5590
chajec@irli.org

**Matt A. Crapo**
D.C. Bar No. 473355, admitted *pro hac vice*
Immigration Reform Law Institute
25 Massachusetts Avenue, N.W.
Suite 335
Washington, D.C. 20001
Telephone: 202-323-5590
mcrapo@irli.org

**Brent P. Smith**
Texas Bar No. 24080722, admitted *pro hac vice*
County Attorney, Kinney County, Texas
P.O. Box 365
Brackettville, Texas 78832
Telephone: 830-563-2240

bsmith@co.kinney.tx.us

**Kimberly Kreider-Dusek**
Texas Bar No. 50511919
County Attorney, McMullen County, Texas
P.O. Box 237
Tilden, Texas 78072
kimberly.dusek@mcmullencounty.org

**Douglas Poole**
Texas Bar. No. 16115600
S.D. Texas Bar. No. 619
McLeod, Alexander, Powel, & Apffel, P.C.
802 Rosenberg
Galveston, Texas 77553
Telephone:  409-763-2481
dwpoole@mapalaw.com

*Attorneys for Plaintiffs*

-12-

## CERTIFICATE OF SERVICE

    I hereby certify that this Response to Order to Show Cause and Motion for Leave to File an Amended Complaint has been served on Defendants by operation of the Court CM/ECF system on this 10th day of November, 2023.

                                            /s Matt A. Crapo
                                            MATT A. CRAPO