UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

_____
                                        )
SHERIFF BRAD COE, *et al.*              )
                                        )
                  Plaintiffs,           )
     v.                                 )   No. 3:21-cv-00168
                                        )
JOSEPH R. BIDEN, JR., *et al.*          )
                                        )
                  Defendants.           )
_____)

**DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Recently, in *United States v. Texas*, the Supreme Court held that two States lacked standing to challenge DHS's civil immigration enforcement guidance (the "Guidance")—the same guidance being challenged here—because parties generally cannot seek a court order compelling greater law enforcement. *Texas* controls here and should end this case. Nevertheless, Plaintiffs argue that their claims are still viable based on an argument that the Supreme Court expressly rejected. Plaintiffs distinguish their case because they challenge the Guidance's effects upon *detention decisions*, and *Texas* did not resolve whether parties have standing to challenge that. But *Texas* did not reach that question because the Supreme Court concluded that the Guidance simply *does not affect detention decisions*. That decision binds this Court and requires dismissal of the Third Amended Complaint ("TAC") (ECF No. 106). In any event, federal courts lack jurisdiction to supervise the Executive's enforcement of immigration laws, including decisions related to detention. The Court should finally dismiss the operative Complaint.

1

## I. THE COURT SHOULD DISMISS THE THIRD AMENDED COMPLAINT UNDER RULE 12(B)(1).

Defendants move to dismiss the Third Amended Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal is required if the court "lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden of "demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991).

### A. The Supreme Court Foreclosed Plaintiffs' Theory.

The Court should dismiss the Third Amended Complaint because the Supreme Court directly rejected Plaintiffs' theory that the Guidance violates the INA's detention requirements. *See United States v. Texas*, 599 U.S. 670, 683 (2023). Plaintiffs bring three counts against "the Guidelines." Their theory of the case is that "the unlawful and unconstitutional Guidelines," TAC ¶ 33, "make detentions that are mandated in statutes discretionary," TAC ¶ 34; *see also* Sec. Am. Comp. ¶ 30 (ECF No. 59) (similar).

Plaintiffs' claims fail because the Guidance does not govern detention decisions. The Guidance itself makes no mention of detention; rather it explicitly "provides guidance for the *apprehension and removal* of noncitizens" (with no mention of "detention"). Guidance at 1 (emphasis added). And the Supreme Court recognized that the Guidance "do[es] not affect continued detention of noncitizens already in federal custody." *Texas*, 599 U.S. at 683 n.5.

The Supreme Court's determination binds this Court and forecloses Plaintiffs' detention-related challenge to the Guidance. In deciding that the Guidance does not relate

to detention determinations, the Supreme Court considered and rejected the State plaintiffs' claims that the government had failed to detain noncitizens in violation of the INA. Texas and Louisiana argued that, "[l]ike [detention under] section 1226, detention under section 1231 is mandatory," and that the government's exercise of discretion under the Guidance "has resulted in the release of aliens subject to removal orders." Brief for Appellees at 26, *United States v. Texas*, No. 22-58 (Oct. 18, 2022). The Solicitor General corrected the record. Brief for Petitioners at 24, *United States v. Texas*, No. 22-58 (Sept. 12, 2022) (the Guidance "do[es] not provide guidance pertaining to detention and release determinations") (quotation marks omitted)). The Court agreed with the United States' reading of the Guidance, *Texas*, 599 U.S. at 683 n.5, and Plaintiffs cannot escape the Court's clear statement that effectively bars this challenge to the Guidance, *id.* at 681.

Plaintiffs' Third Amended Complaint targets the Guidance. But as the government has long maintained, as the document itself makes clear, and as the Supreme Court has resolved, the Guidance does not address detention. The Court should therefore dismiss the Third Amended Complaint.

### B. *No Federal Court May Enforce Any Detention Mandate In Section 1225*.

Even if the Supreme Court had not foreclosed Plaintiffs' theory, this Court would still lack jurisdiction. Plaintiffs request that the federal judiciary micromanage the Executive's enforcement of federal immigration law. As doing so would go beyond "the Judiciary's proper—and properly limited—role in our constitutional system," the Court should dismiss the Third Amended Complaint. *See Texas*, 599 U.S. at 675-76.

3

Plaintiffs cannot meet their burden to establish that their claims are "'traditionally thought to be capable of resolution through the judicial process.'" *Id.* at 676 (quoting *Raines v. Byrd*, 521 U. S. 811, 819 (1997)). This kind of case, in which local officials attempt to enlist a federal court to redirect the enforcement of federal immigration law, would have been virtually unthinkable until recently. The closest comparison, of course, is the *Texas* case, which the Supreme Court described as an "extraordinarily unusual lawsuit." So is this case. This case also bears similarities to *Crane v. Johnson*, where the Fifth Circuit held that ICE officers and the State of Mississippi lacked standing to challenge DACA. *See* 783 F.3d 244, 253-55 (5th Cir. 2015). Finally, this case arises against the backdrop of the "leading precedent [of] *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)." *Texas*, 599 U.S. at 677. "In 'American jurisprudence at least,' a party 'lacks a judicially cognizable interest in the prosecution ... of another.'" *Id.* (quoting *Linda R.S.*, 410 U.S. at 619). Just as the Supreme Court explained that "prosecution" extended to arrest and removal in the immigration context, so too it extends to the detention of persons who are arrested and subject to removal proceedings. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999) ("At each stage" of the removal process, "the Executive has discretion to abandon the endeavor.").

The Court should be particularly wary of exercising jurisdiction where county governments and officials have a tenuous claim to injury and seek to veto federal policymaking. In our "dual system" of federal and local government, "federal policies frequently generate indirect effects" on the finances of state, and county, governments. *See*

*Texas*, at 680 n.3. The local government plaintiffs' injuries are "attenuated," *id.*, and not of the type that support jurisdiction in an Article III court.

This Court need not determine that the government is complying with the INA's requirements to grant this motion. *See id.* at 685. (To be clear, the government is in compliance.) In fact, the Court lacks meaningful standards to do so, because enforcement prioritization is a quintessentially Executive function. *See id.* at 679-80. With history and tradition as its guide, the Court should dismiss the Third Amended Complaint.

C.  *APA Challenges To DHS's Application Of Enforcement Priorities Are Precluded From Review.*

The APA's statutory review scheme also forecloses Plaintiffs' challenge. An action cannot proceed under the APA when another statute precludes judicial review. 5 U.S.C. § 701(a)(1). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). A detailed mechanism for review of some claims by some plaintiffs is "strong evidence that Congress intended to preclude [other types of plaintiffs] from obtaining judicial review." *United States v. Fausto*, 484 U.S. 439, 448 (1988).

Congress has set out a detailed statutory review scheme for claims pertaining to the INA. *See* 8 U.S.C. § 1252; *id.* § 1229. That review scheme is the exclusive means of judicial review and precludes statutory claims that do not fall within its parameters. *See, e.g., id.* § 1252(a)(5) ("For purposes of this chapter, in every provision that limits or

5

eliminates judicial review or jurisdiction to review, [those terms] include . . . review pursuant to any other provision of law (statutory or nonstatutory)"). Section 1252(b)(9) channels judicial review of all "decisions and actions leading up to or consequent upon final orders of deportation," including "non-final order[s]," into one proceeding exclusively before a court of appeals. *AADC*, 525 U.S. at 483, 485.

A separate—and even more limited—scheme governs judicial review of expedited removal orders. *See* 8 U.S.C. § 1252(a)(2)(A); *id.* § 1252(e). With respect to removal proceedings under § 1229a, those provisions circumscribe district court jurisdiction over "*any* issue—whether legal or factual—arising from *any* removal-related activity," which "can be reviewed *only* through the [statutorily defined] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029-31 (9th Cir. 2016); *see Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) (similar). That includes "policies-and-practices challenges," *J.E.F.M.*, 837 F.3d at 1035, arising from any "action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), whether the challenge is to an actual final order of removal or whether there even is a final order at all, *J.E.F.M.*, 837 F.3d at 1032. Thus, § 1252(b)(9) is an "unmistakable zipper clause" that means "no judicial review in deportation cases unless this section provides judicial review." *AADC*, 525 U.S. at 482-83. And as to expedited removal determinations under § 1225(b)(1), "no court shall have jurisdiction to review" any challenge to "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)," subject to minor exceptions, in the U.S. District Court for the District of Columbia. 8 U.S.C. § 1252(a)(2)(A)(iv), (e)(3); *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021).

The claims here "arise[] from" "action[s] taken or proceeding[s] brought to remove an alien" under § 1229a, 8 U.S.C. § 1252(b)(9), and "procedures and policies" implementing § 1225(b)(1). 8 U.S.C. § 1252(a)(2)(A)(iv). Plaintiffs challenge what they allege to be DHS's practice regarding the detention of certain noncitizens "pending [a] decision" on removal, *id.* § 1225(b)(3)(B); § 1226(a). Because § 1252 provides the sole mechanism for review of all "decisions and actions leading up to or consequent upon final orders of deportation," *AADC*, 525 U.S. at 485, and because Plaintiffs cannot invoke § 1252, their claims necessarily fail.

As Justice Scalia explained for the Supreme Court in *Fausto*, when Congress provides for review by specific plaintiffs, but not by others, the excluded plaintiffs cannot obtain judicial review. 484 U.S. at 448. That is precisely what Congress did here. In *Block*, for example, Congress provided a specific review scheme for "dairy handlers" but said nothing at all about "consumers." 467 U.S. at 346-47. This did not mean that milk consumers could resort to the APA to challenge the agency action; it meant they could not challenge the action at all. *Id.* at 347. Here, by providing a detailed and limited review scheme for noncitizens' claims, Congress has implicitly precluded claims by other persons or entities, including by these plaintiffs, under the APA or otherwise. *Cf. Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C. Cir. 1993) (holding that organizational plaintiff could not challenge INS policies "that bear on an alien's right to legalization").

Even setting aside the broad preclusion of APA claims under § 701(a)(1) and the Supreme Court's precedents in *Fausto* and *Block*, Congress specifically precluded the challenges Plaintiffs raise here. Plaintiffs contend that the Guidance violates § 1225(b)(1)'s

7

supposed mandate for the expedited removal of certain noncitizens and the ordinary removal proceedings for other noncitizens. *See* TAC ¶ 101. But Congress has explicitly precluded judicial review of this claim: "[N]o court shall have jurisdiction to review" "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A), (A)(iv); *see id*. § 1252(b)(9) (precluding all such challenges as those brought here under § 1225(b)).

## CONCLUSION

This Court lacks jurisdiction to hear the Third Amended Complaint.[1] The Court should grant Defendants' motion to dismiss.

Dated: December 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

 */s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
Attorney-in-charge
ME Bar No. 006018
KUNTAL CHOLERA
DC Bar No. 1031523
Trial Attorneys

---

[1] There are also plaintiff-specific barriers to review: the Civil Service Reform Act precludes review of ICE officers' claims, Defs.' Mot. to Dismiss at 36-37 (ECF No. 62); the police foundation lacks organizational standing, *id.* at 37-39; and the county government and sheriffs fail to plausibly allege an injury that is traceable to the Guidance and redressable by a federal court, *id.* at 15-20; *see also Texas*, 599 U.S. at 686-704 (Gorsuch, J., joined by Thomas, J., and Barrett, J., concurring in the judgment). In the interest of judicial economy, however, Defendants rely in this motion on grounds that require dismissal of the Third Amended Complaint in its entirety and as to all Plaintiffs. Defendants intend to raise these further barriers to review in the future, if necessary.

        United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 305-7667
Fax: (202) 616-8460
Email: Brian.C.Rosen-Shaud@usdoj.gov
       Kuntal.Cholera@usdoj.gov

<u>Mailing Address:</u>
Post Office Box 883
Washington, D.C. 20044

<u>Courier Address</u>
1100 L Street NW
Washington, D.C. 20005

EREZ REUVENI
CA Bar No. 264124
Assistant Director
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
202-307-4293 (telephone)
Email: Erez.R.Reuveni@usdoj.gov

*Counsel for Defendants*


DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
State Bar No. 10131415
S.D. I.D. 7959
Southern District of Texas
1000 Louisiana, Suite 2300 Houston, TX 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
Daniel.Hu@usdoj.gov

*Local Counsel*

9

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 21, 2023.

                                            */s/ Brian Rosen-Shaud*
                                            BRIAN C. ROSEN-SHAUD