# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| BRAD COE, *et al.*, ) | |
| ) | |
|    *Plaintiffs*, ) | |
| ) | Civil Action No. |
| v. ) | 3:21-CV-00168 |
| ) | |
| JOSEPH R. BIDEN, JR., *et al.*, ) | |
| ) | |
|    *Defendants*. ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

**ARGUMENT AND AUTHORITIES**

I.      *United States v. Texas* **does not control Plaintiffs' claims.**

Defendants contend that the Supreme Court has "directly rejected" the claim "that the Guidance violates the INA's detention requirements." ECF 107 at 2 (citing *United States v. Texas*, 599 U.S. 670, 683 (2023)). Defendants' attempt to stretch the Court's holding in *United States v. Texas* to bar any challenge to the Guidance goes too far. The Supreme Court's holding in *Texas* is limited to challenges of arrest and prosecution policies but does not extend to challenges of policies governing the continued detention of aliens who have already been arrested and prosecuted. Because Plaintiffs seek to challenge such a detention policy in their amended complaint, the Court should distinguish *United States v. Texas* and deny Defendants' motion to dismiss.

In *United States v. Texas*, 599 U.S. 670, 143 S. Ct. 1964 (2023), the Supreme Court held that the States of Texas and Louisiana lacked standing to bring their *claims* regarding federal statutes that mandated the *arrest* of certain illegal aliens. *See* 143 S. Ct. at 1969-70 ("The States want the Federal Judiciary to order the Department to alter its arrest policy so that the Department arrests more noncitizens.  The threshold question is whether the States have standing under Article III to maintain this suit.  The answer is no."). The Court reiterated that it was focused on Executive Branch policies relating to arrest:  "The States' novel standing argument, if accepted, would entail expansive judicial direction of the Department's arrest policies." *Id*. at 1973.  Accordingly, Plaintiffs have conceded that standing no longer exists with respect to claims relating to the mandatory duty to arrest or to remove certain aliens under 8 U.S.C. §§ 1226(c) and 1231(a).

Plaintiffs do have standing, however, to bring claims relating to the mandatory duty to *detain* certain illegal aliens who have *already* been arrested and who have *already* been placed in removal proceedings. Plaintiffs contend that the Guidelines are contrary to federal law because they make certain enforcement actions that are mandated by statute into discretionary actions. The Supreme Court did not foreclose such a challenge in *United States v. Texas*. Indeed, the Supreme Court explicitly stated that its holding does not cover "policies governing the continued detention of noncitizens who have already been arrested …." 143 S. Ct. at 1974. Plaintiffs' first cause of action concerns the mandatory detention of illegal aliens who have already been arrested and for whom removal is being sought. Accordingly, the Supreme Court's holding in *United States v. Texas* does not control this case.

Defendants also contend that the Guidance does not govern or affect detention policies, suggesting that the Supreme Court in *Texas* decided that issue in their favor. ECF 107 at 2-3. But the Supreme Court's acceptance of the Solicitor's General representation that the Guidance "do[es] not affect continued detention of noncitizens already in federal custody," 143 S. Ct. at 1974 n.5, should be limited to the context of that case and is not determinative here. First, the representation is somewhat circular inasmuch as it refers to aliens "already in federal custody." Aliens described in 8 U.S.C. §§ 1226(c) and 1231 and whom the government had decided to arrest and prosecute were in fact being detained as required by statute. Thus, the Guidance played no role in their continued detention.

Second, the State plaintiffs in *Texas* challenged the government's refusal to take custody of certain criminal aliens (that is, the plaintiffs sought an order directing the government to arrest and prosecute more or other aliens). Therefore, that case did not involve a situation in which the government exercised its prosecutorial discretion to arrest and prosecute certain aliens (that is, initiate removal proceedings) yet failed to comply with a statutory detention mandate. Instead, *United States v. Texas* focused on the government's discretion to decide whether to remove an alien from the United States in the first place and not on whether an alien against whom removal proceedings are pending must be detained. 143 S. Ct. at 1972; *see also Arizona v. United States*, 567 U.S. 387, 396 (2012) ("Federal officials, as an initial matter, must decide whether it makes sense to pursue removal at all.").

In contrast, Plaintiffs claim that Defendants are failing to comply with the statutory detention mandate in 8 U.S.C. § 1225(b) with respect to aliens whom Defendants have already arrested and decided to remove by initiating removal proceedings through the issuance of a Notice to Appear ("NTA"). While the Guidance memorandum nominally "provides guidance for the apprehension and removal of noncitizens," ECF 107 at 2 (quoting Guidance at 1), it requires immigration officers to consider various aggravating and mitigating circumstances before deciding to take any "enforcement action." Guidance at 3-4. Nowhere does the Guidance exclude detention decisions from such "enforcement actions" or contemplate that certain enforcement actions may be mandated by statute. Inasmuch as the Guidance governs all enforcement

actions, which include detention determinations, Plaintiffs' claims are not controlled by *United States v. Texas*.

## II. Plaintiffs' claims are justiciable inasmuch as they call for routine statutory interpretation and APA review.

Defendants also suggest that this Court lacks jurisdiction because this an "extraordinarily unusual lawsuit" in which Plaintiffs seek to "micromanage the Executive's enforcement of federal immigration law." ECF 107 at 3-4. According to Defendants, the Court, guided by history and tradition, should dismiss Plaintiffs' claims because they are not "traditionally thought to be capable of resolution through the judicial process." *Id.* at 4-5. But Plaintiffs claims do not seek a judicial decree "redirect[ing] the enforcement of federal immigration law," ECF 107 at 4, or second-guessing the government's "enforcement prioritization." *Id.* at 5. Instead, Plaintiffs' claims merely call for routine statutory interpretation and judicial review of agency action under the Administrative Procedure Act ("APA"). *See* ECF 106 at 24-30 (Third Amended Complaint raising three APA claims).

Unlike the States' claims in *Texas*, Plaintiffs no longer seek a judicial order directing Defendants "to alter its arrest policy so that the Department arrests more noncitizens." 143 S. Ct. at 1969. Instead, Plaintiffs seek a declaration that the enforcement actions made discretionary under the Guidance are contrary to law insofar as the Guidance permits immigration officers to exercise discretion in deciding whether to detain aliens placed in removal proceedings pursuant to 8 U.S.C. § 1225(b)(2). ECF 106 at 24-27 (¶¶ 98-113), 30 (Prayer for Relief ¶ A). Whether § 1225(b)(2) mandates the

detention of aliens pending adjudication of removal proceedings is a question of statutory interpretation that is characteristically a question for the judiciary. For example, the Supreme Court has held that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 138 S. Ct. 830, 845 (2018); *but see Biden v. Texas*, 142 S. Ct. 2528, 2542 n.5 (2022) (leaving unanswered the question of "whether the detention requirement in section 1225(b)(2)(A) is subject to principles of law enforcement discretion, as the Government argues, or whether the Government's current practice simply violates that provision").

Unlike the States' claims raised in *Texas*, Plaintiffs' claims in the Third Amended Complaint do not ask the Court to interfere with Defendants' discretion to arrest or seek removal of any particular alien or class of aliens. Instead, Plaintiffs seek a declaration that § 1225(b)(2) mandates the detention of aliens pending completion of removal proceedings, that Congress did not confer discretion upon the Executive to ignore this detention mandate, and that by making the detention of such aliens discretionary, the Guidance is contrary to law. ECF 106 at 24-27 (¶¶ 98-113), 30 (Prayer for Relief ¶ A). Because Plaintiffs' claims fall well within the familiar territory of judicial review of agency action, the Court should reject Defendants' argument that this is an extraordinary suit impinging on the Executive's prosecutorial prerogative.

### III. The INA does not bar judicial review of Plaintiffs' claims.

The APA states that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Such review is

unavailable where another statute precludes judicial review. *Id.* at § 701(a)(1). Defendants argue that judicial review is precluded by the INA. ECF 107 at 5-8. But none of the provisions identified by Defendants precludes review of Plaintiffs' claims.

Defendants suggest that 8 U.S.C. §§ 1252(a)(5) and (b)(9) preclude review of Plaintiffs' claims. ECF 107 at 5-7. Neither section applies here. As the district court in *Texas* recognized, § 1252(a)(5) merely provides that circuit courts of appeal have exclusive jurisdiction over any petition for review "filed … in accordance with" § 1252 itself, which governs judicial review of removal orders. 606 F. Supp. 3d 437, 474 (S.D. Tex. 2023), *rev'd on other grounds*, 143 S. Ct. 1964. Inasmuch as Plaintiffs are not challenging an order of removal, § 1252(a)(5) is inapplicable.

Section 1252(b)(9) is similarly inapplicable because it merely requires an alien subject to an order of removal to consolidate judicial review of his or her immigration proceedings into one action. *See* 606 F. Supp. 3d at 474. Again, Plaintiffs are not seeking review of a removal order or any aspect of a removal proceeding that any particular aliens has undergone. Therefore, § 1252(b)(9) is inapplicable. *See id.* (quoting *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.") (cleaned up).[1]

---

[1] Notably, the Supreme Court did not rule that the States' claims were precluded by §§ 1252(a)(5) and (b)(9) in *Texas* itself. If §§ 1252(a)(5) and (b)(9) precluded review of cases such as this, the Supreme Court surely would not have decided the case on "extraordinary" standing grounds.

Indeed, the Fifth Circuit has already held that "the entirety of the text and structure of § 1252 indicates that it operates only on denials of relief for individual aliens." *Texas v. Biden*, 20 F.4th 928, 977 & n.11 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022); *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-32 (9th Cir. 2016) (describing §§ 1252(a)(5) and (b)(9) as merely limiting "how immigrants can challenge their removal proceedings," and "not jurisdiction-stripping statutes that, by their terms, foreclose all judicial review of agency actions"). Inasmuch as Plaintiffs do not seek review of any aspect of a particular removal order, §§ 1252(a)(5) and (b)(9) do not preclude review here.

Defendants briefly mention *United States v. Fausto*, 484 U.S. 439, 448 (1988), to suggest that the judicial review scheme for individual aliens under § 1252 precludes judicial review of agency actions by other parties. ECF 107 at 5, 7. In *Fausto*, the Supreme Court concluded that because a certain class of employees were not included in provisions governing judicial review, Congress intentionally excluded from judicial review claims from such employees. 484 U.S. at 448-49. Nothing in § 1252 suggests that Congress intended to foreclose judicial review to parties other than individual aliens such as Plaintiffs who are adversely affected by agency action that is contrary to the INA itself and the APA. Absent a clear indication that Congress intended to foreclose such judicial review, the Court should not infer that Congress intended to bar Plaintiffs' claims through § 1252. *See Texas v. United States*, 524 F. Supp. 3d 598, 641 n.42 (S.D. Tex. 2021) (finding *Fausto* irrelevant to the INA's statutory scheme).

Finally, Defendants argue that § 1252(a)(2)(A)(iv) precludes review. Subject to a limited exception, *see* 8 U.S.C. § 1252(e), § 1252(a)(2)(A)(iv) precludes review of "procedures and policies adopted" "to implement the provisions of section 1225(b)(1) of this title." Contrary to Defendants' suggestion, Plaintiffs do not seek review of any policy or procedure adopted to implement expedited removal under § 1225(b)(1). Indeed, in the Third Amended Complaint, Plaintiffs specifically exclude the expedited removal scheme from its First Cause of Action. *See* ECF 106 at 24, ¶ 101 ("Defendants' making it discretionary under the Guidelines to detain illegal aliens apprehended at the southern border *and who are not expeditiously removed under 8 U.S.C. § 1225(b)(1)* or directed to remain in Mexico under 8 U.S.C. § 1225(b)(2)(C) is contrary to the mandatory statutory command that such aliens be detained.") (emphasis added); *see also id.* at 26, ¶ 107 (alleging that "detention determinations do not constitute unreviewable exercises of prosecutorial discretion because, *at least with respect to aliens being released following the issuance of an NTA*, Defendants have made the decision to prosecute such aliens"); *id.* at 30, ¶ A (praying that the Court "[d]eclare … that the Guidelines adopted by Defendants are contrary to the statutory detention mandate in 8 U.S.C. § 1225(b)(2)").

Plaintiffs' Third Amended Complaint simply does not challenge any policy or procedure actually implementing the expedited removal scheme under § 1225(b)(1). Accordingly, § 1252(a)(2)(A) does not preclude review of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss the Third Amended Complaint.

Respectfully submitted,

Dated:  January 10, 2024        By: s/ Christopher J. Hajec
**Christopher J. Hajec** (Attorney in charge)
D.C. Bar No. 492551, admitted *pro hac vice*
Immigration Reform Law Institute
25 Massachusetts Avenue, N.W.
Suite 335
Washington, D.C. 20001
Telephone:  202-323-5590
chajec@irli.org

**Matt A. Crapo**
D.C. Bar No. 473355, admitted *pro hac vice*
Immigration Reform Law Institute
25 Massachusetts Avenue, N.W.
Suite 335
Washington, D.C. 20001
Telephone:  202-323-5590
mcrapo@irli.org

**Brent P. Smith**
Texas Bar No. 24080722, admitted *pro hac vice*
County Attorney, Kinney County, Texas
P.O. Box 365
Brackettville, Texas 78832
Telephone: 830-563-2240
bsmith@co.kinney.tx.us

**Kimberly Kreider-Dusek**
Texas Bar No. 50511919
County Attorney, McMullen County, Texas
P.O. Box 237
Tilden, Texas 78072
kimberly.dusek@mcmullencounty.org

**Douglas Poole**
Texas Bar. No. 16115600
S.D. Texas Bar. No. 619
McLeod, Alexander, Powel, & Apffel, P.C.
802 Rosenberg
Galveston, Texas 77553
Telephone:  409-763-2481
dwpoole@mapalaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that this Response in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint has been served on Defendants by operation of the Court CM/ECF system on this 10th day of January, 2024.

/s Matt A. Crapo
MATT A. CRAPO